[No. B032900. Second Dist., Div. Three. Apr. 24, 1989.]

COUNTY OF LOS ANGELES, Cross-complainant and Appellant, v. JOE REYES GUERRERO, Cross-defendant and Respondent.

**COUNSEL**

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, and Philip S. Miller, Deputy County Counsel, for Cross-complainant and Appellant.

Shield & Smith and Douglas Fee for Cross-defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Cross-complainant and appellant County of Los Angeles (County) appeals an order dismissing its cross-complaint against cross-defendant and respondent Joe Reyes Guerrero (Guerrero), and granting Guerrero's motion for determination of good faith settlement ██ ██ (Code Civ. Proc., § 877.6.)[1, 2]

The fact the settlement was entered into well before the filing of suit does not preclude a finding of good faith. Notwithstanding the settlement's disproportionality, because Guerrero lacks other assets, substantial evidence supports the finding of good faith settlement. The order is therefore affirmed.

### FACTUAL & PROCEDURAL BACKGROUND

On March 20, 1986, at a Lancaster intersection, Thomas Russo (Russo) was struck by a car driven by Guerrero. As a consequence, Russo sustained severe and permanently disabling injuries.

On May 30, 1986, Interinsurance Exchange of the Automobile Club of Southern California (Auto Club), Guerrero's insurer, paid the policy limits of $15,000 each to Russo and to his wife, for a total of $30,000. On June 9, 1986, the Russos executed a full release in Guerrero's favor.

The Russos filed a claim with the County on July 1, 1986.

On February 23, 1987, the Russos filed suit against the Auto Club; California Automobile Assigned Risk Plan also known as Western Association of Automobile Insurance Plans; and the County. Guerrero was not named as a defendant.

Russo alleged negligence, negligence per se based on Guerrero's license suspension, and loss of consortium.

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

[2] Where a defendant cross-complains against a third party or against a codefendant, the dismissal of the cross-complaint is a final adverse adjudication of the cross-complainant's rights against a distinct party, and the order is appealable. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 303 [259 P.2d 901]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 53, pp. 75-76.)

While section 877.6, subdivision (e), provides a party aggrieved by a determination of good faith settlement may seek review by petition for writ of mandate within 20 days after service *of written notice of the determination*, the provision does not diminish the appealability of the instant order of dismissal.

With respect to the County, Russo alleged: the County had maintained the roadway negligently, and failed to provide adequate traffic controls, signals and/or warnings; the County knew, or should have known of said "dangerous condition," and of numerous previous accidents that had occurred at the site.

The County answered on April 9, 1987, denied the allegations and asserted various affirmative defenses. The same day, the County filed a cross-complaint against Guerrero and Linda Lee Rainer (Rainer) for indemnity and declaratory relief. Rainer was sued as the owner of the vehicle driven by Guerrero.

Guerrero answered the cross-complaint on June 25, 1987, denied the allegations and asserted the County's negligence was the sole and proximate cause of the Russos' injuries.

On August 6, 1987, Guerrero filed a motion for determination of good faith settlement (§ 877.6). Guerrero's supporting declaration averred: Guerrero is 33 years old, married, with three children; he is employed by Lockheed as a structures assembler and earns $550 gross per week; his only assets are $11,000 equity in his Palmdale home, two 1979 vehicles, and $100 in a checking account.

Guerrero conceded his $30,000 settlement with the Russos was below his probable proportionate liability for their damages, but submitted that in view of his limited assets, the settlement was in good faith, requiring the dismissal of the County's cross-complaint against him.

The hearing on the good faith settlement, which originally was scheduled for September 4, 1987, was continued to October 2, 1987, then to November 6, 1987, and finally proceeded on December 4, 1987.

The County filed opposition papers on November 30, 1987, which stated in relevant part: the claim the Russos filed with the County on July 1, 1986, made no mention of the June 9, 1986 settlement; the County did not learn of the settlement until after it served Guerrero with the cross-complaint in May 1987; Guerrero's deposition testimony established the sole responsibility for the accident lay with Guerrero;[3] the settlement amount was so low as to be outside the reasonable range of Guerrero's relative share of liability; at

---

[3] In his deposition, Guerrero stated: he was travelling east on Avenue T and came to the 96th Street intersection; Guerrero saw a stop sign and came to a full stop at about three feet before the intersection; Guerrero could not see clearly to his left because it was raining and he had a piece of plastic in place of the missing driver's side window; Guerrero then proceeded into the intersection and collided with Russo.

a minimum, the County was entitled to additional time to conduct discovery.

The matter was heard December 4, 1987. The trial court granted Guerrero's motion for an order of determination of good faith settlement, and dismissed the County's cross-complaint with respect to Guerrero. The County appealed.

## CONTENTIONS

The County contends: (1) it was entitled to more time to develop evidence to establish the settlement's lack of good faith; and (2) the trial court erred in finding the settlement to be in good faith.

## DISCUSSION

1. *Good faith settlement not premature.*

Section 877.6 provides, inter alia, a judicial determination a settlement was made in good faith bars any other joint tortfeasor from any further claims against the settling tortfeasor for partial or comparative indemnity. (§ 877.6, subd. (c).) The legislation serves the dual objectives of equitably apportioning costs among the parties at fault, and encouraging settlements. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 494 [213 Cal.Rptr. 256, 698 P.2d 159].)

We note the Auto Club paid the Russos the policy limits on May 30, 1986, and the Russos executed a full release in Guerrero's favor on June 9, 1986. Over eight months then elapsed before the Russos filed suit in February 1987, and the good faith hearing followed 10 months thereafter.

It could be argued that in view of the gravity of Russo's injury, the Auto Club had no choice but to pay out the policy limits at the outset. Because the Russos had the settlement proceeds in hand at the time of the good faith hearing, nothing was to be gained by giving the settlement a good faith imprimatur; it therefore follows the instant good faith determination did not advance the objective of promoting settlements.

However, section 877.6 contemplates that not only proposed settlements, but also executed settlements, may bar further claims against the settling party. "Any party . . . shall be entitled to a hearing on the issue of the good faith of a settlement *entered into* by the plaintiff . . . and one or more alleged tortfeasors . . . ." (§ 877.6, subd. (a), italics added.) Further, "[a] determination by the court that the settlement *was made* in good faith shall

bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . ." (§ 877.6, subd. (c), italics added.)

■ A contrary rule to the effect that a remote settlement is outside the ambit of the statute would intolerably discourage settlements. Further, such a rule would force an insurer to choose between delaying payment in order to obtain a judicial determination of good faith settlement for its insured, and proceeding with payment in order to meet its obligation to the injured third-party.

In addition, while the Russos settled with Guerrero even before litigation commenced, the County had the opportunity to protect its interests by appearing at the good faith hearing and resisting Guerrero's motion for determination of good faith settlement.

Accordingly, the fact that the instant settlement was entered into early does not preclude a finding of good faith.

2. *Substantial evidence supports trial court's finding of good faith settlement.*

a. *Good faith settlement principles.*

Our Supreme Court set forth the governing principles in *Tech-Bilt,* stating: "A[n] . . . appropriate definition of 'good faith,' in keeping with the policies of *American Motorcycle* [*Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 (146 Cal.Rptr. 182, 578 P.2d 899)] and the statute, would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. This is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.' [Citation.] Such a rule would unduly discourage settlements. 'For the damages are often speculative, and the probability of legal liability therefor uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' [Citation.] . . . [¶] But these considerations do not lead to the conclusion that the amount of the settlement is irrelevant in determining good faith. ■ Rather, the intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among the plaintiffs, and a recognition that a settlor should pay

less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously requ ire that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' [Citation.] ■ The party asserting the lack of good faith, who has the burden of proof on that issue (§ 877.6, subd. (d)), should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute. Such a demonstration would establish that the proposed settlement was not a 'settlement made in good faith' within the terms of section 877.6. [Fn. omitted.]" (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 499-500.)

The question of whether a settlement meets the statutory requirement of good faith is one of fact. (*City of Grand Terrace* v. *Superior Court* (1987) 192 Cal.App.3d 1251, 1264 [238 Cal.Rptr. 119].)

 b. *Application here.*

The County does not contend there was any collusion, fraud or tortious conduct aimed at injuring its interests. ■ What the County argues, in effect, is that Guerrero, as an underinsured driver, is not entitled to the benefits of a good faith settlement. The County maintains the $30,000 settlement is not in good faith because even though the policy limits have been paid, the Russos' probable damages exceed $1 million and Guerrero is more than 50 percent liable, rendering the settlement amount grossly disproportionate to Guerrero's proportionate liability and therefore outside the *Tech-Bilt* "ballpark." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.)

In *Schmid* v. *Superior Court* (1988) 205 Cal.App.3d 1244, 1247 [253 Cal.Rptr. 137], defendant Schmid had no assets other than her $55,000 insurance policy, and the alleged damages exceeded $500,000. The trial court denied Schmid's motion seeking good faith approval of a proposed settlement in the amount of her policy limit, because it "did not feel that the percentage of negligence attributable to [codefendant El Dorado] County was realistic and that the amount of the settlement bore a realistic proportion to damages that could be awarded." (*Id.,* at p. 1248.)

The *Schmid* court reversed, relying on the portion of *Tech-Bilt* which held that even when the claimant's damages are obviously great, and the

liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured joint tortfeasor. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499; *Schmid* v. *Superior Court, supra,* at p. 1248.)

*Schmid* found the defendant's lack of assets to be controlling, reasoning "[w]e can think of no earthly good that would come from requiring defendant Schmid to remain in the action. . . . No evidence suggests that Schmid has any assets, or any prospect of acquiring assets, other than her insurance policy. Yet disapproval of the good faith of the settlement would doubtless require Schmid to continue her defense, possibly at the expense of her insurer, [fn. omitted] to avoid a judgment in excess of her policy limits that could require her to declare bankruptcy. [¶] . . . . [¶] Schmid's continued defense would simply increase her defense costs . . . and needlessly add to the work of all personnel of the court." (*Schmid* v. *Superior Court, supra,* 205 Cal.App.3d at pp. 1248-1249.)

Based on the limited record before us, it appears that while Guerrero's liability may be substantial, the County is either immune or only slightly liable. The Russos alleged the County's negligence consists, inter alia, of its failure to provide adequate traffic controls. However, Government Code section 830.4 precludes the liability of a public entity for dangerous conditions of public property from being based upon the mere failure to provide regulatory traffic signs. (Gov. Code, § 830.4, Law Revision Commission Comment.) Further, Guerrero testified at his deposition that he saw and complied with the stop sign at the intersection, and then proceeded into the intersection despite the fact he could not see clearly to his left because of the wet plastic in place of the missing driver's window. The Russos thus may not be able to establish proximate causation with respect to the County.

We therefore agree with the County that the $30,000 settlement is not within the reasonable range of Guerrero's proportional share of comparative liability for the Russos' injuries. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.)

However, there are other relevant considerations. To reiterate: " '[E]ven where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' [Citation.]" (*Ibid.*) *Tech-Bilt* thus addresses this very fact situation. Here, as in *Schmid,* the scale of the potential damages and Guerrero's

modest "financial [condition] and insurance policy limits" (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499) are necessarily controlling and effectively override the other *Tech-Bilt* factors.

In view of the joint and several liability of joint tortfeasors, withholding the good faith imprimatur from this settlement would not benefit the County. Guerrero's judgment-proof status would cause the Russos to look solely to the County to satisfy any judgment. The perceived injustice in such a result is no different from any other case involving joint tortfeasors, where one defendant is insolvent, and a deep pocket defendant is left with full liability and without a meaningful action for comparative indemnity.[4]

It is arguable that Guerrero might win the lottery or receive some other windfall, and because it is conceivable that Guerrero may be able at some point to satisfy a judgment, he should not be dismissed out. The contention lacks merit because, as *Tech-Bilt* recognized, "practical considerations obviously require that the evaluation be made on the basis of information available *at the time of the settlement.*" (*Tech-Bilt, Inc.* v *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499, italics added.)

The County also argues Guerrero is gainfully employed, and even if he has the ability to pay only $100 per month, he should not be permitted to escape scot-free. However, *Tech-Bilt* contemplates "that a settlor should pay less in settlement than he would if he were found liable after a trial." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.) Here, Guerrero gets out cheaper than he would absent a settlement. To adopt the County's position would preclude most any settlement from being found in good faith, because a defendant usually has the means to pay some additional sum. Further, Guerrero's income was a factor which the trial court considered in ruling on the motion.

We conclude substantial evidence supports the trial court's determination the County failed to meet its burden of demonstrating the settlement is lacking in good faith. (§ 877.6, subd. (d).)

---

[4] Proposition 51 (Civ. Code, § 1431 et seq.), which retains the traditional joint and several liability doctrine with respect to a plaintiff's *economic* damages, but adopts a rule of several liability for *noneconomic* damages (Civ. Code, § 1431.2, subd. (a); *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1198 [246 Cal.Rptr. 629, 753 P.2d 585]), has no application here.

In *Evangelatos,* the Supreme Court determined Proposition 51 applies prospectively, and does not apply to causes of action which accrued prior to the effective date of the initiative measure, which was approved by the People in the June 3, 1986, primary election, and went into effect the following day. (44 Cal.3d at pp. 1193, fn. 2, 1227.)

Although the Russos did not file suit until February 23, 1987, the crucial event here is the accident date of March 20, 1986, at which time their causes of action accrued.

3. *No abuse of discretion in denial of continuance.*

In its November 30, 1987, opposition to Guerrero's motion for determination of good faith settlement, the County argued that, at a minimum, it was entitled to additional time in which to conduct discovery. The County maintained it had been involved in the litigation only since April 1987 and, apart from answering the complaint and filing a cross-complaint, its sole efforts in the case had been directed at resisting Guerrero's motion. It argued the only discovery conducted to date had been Guerrero's deposition, which had been set for four occasions before actually proceeding, and the investigating officer had yet to be deposed. Further, reconstruction of the accident remained to be accomplished. The County submitted that upon completion of discovery, its conclusion Guerrero and/or Russo were exclusively responsible would remain unchanged.

■ We conclude the trial court properly proceeded to hear and to rule on the matter on December 4, 1987.

The County's claim it had insufficient time to conduct discovery is unpersuasive. We note the hearing on the good faith settlement, which originally was scheduled for September 4, 1987, was continued three times, and finally proceeded on December 4, 1987. Further, over nine months elapsed between the time the County was served and the date of the good faith hearing. The County concedes the sole discovery it conducted prior to the hearing was Guerrero's deposition. It contends, however, it did not have the opportunity to conduct a follow-up investigation after the November 12, 1987, deposition. However, there was a span of 22 days between the deposition and the good faith hearing. In sum, the County's lack of diligence with respect to discovery did not warrant another continuance of the good faith hearing.

Further, and in any event, in view of Guerrero's lack of resources, it is unclear what value any additional discovery would have. It is established that Guerrero lacks the means to satisfy a judgment of any size. Consequently, reconstruction of the accident, which would have been the focus of the County's discovery efforts, would have had no bearing on the good faith of the subject settlement.

## DISPOSITION

The order is affirmed. The County to bear costs on appeal.

Danielson, J., and Croskey, J., concurred.

A petition for a rehearing was denied, May 22, 1989, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 12, 1989.