[No. E013134. Fourth Dist., Div. Two. Jan. 28, 1994.]

ARIZONA PIPELINE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
SOUTHERN PACIFIC TRANSPORTATION COMPANY et al., Real
Parties in Interest.

**COUNSEL**

Portigal, Hammerton & Allen, James R. Hammerton and Debra E. Allen for Petitioner.

No appearance for Respondent.

O'Melveny & Myers, Charles C. Read and John A. Crose, Jr., for Real Parties in Interest.

**OPINION**

**TIMLIN, J.**—In this proceeding we decide that in an action originated by a complaint for declaratory relief, settlements among some alleged joint tortfeasors as cross-defendants in cross-complaints in that action for implied equitable comparative indemnity and contribution, but not involving any of the tort plaintiffs in separate actions, are not subject to a good faith determination under Code of Civil Procedure section 877.6[1] because there has been no showing that these settlements will ultimately result in the equitable sharing of costs among all the joint tortfeasor parties at fault for the tort plaintiffs' injuries and property damage.

We, therefore, conclude that the trial court erred in granting the motions of real parties in interest determining the settlements to be in good faith pursuant to section 877.6, dismissing all cross-complaints against the real parties, except Calnev, and barring all current and future actions against them, except Calnev, for equitable comparative contribution, or partial or comparative indemnity. Accordingly, we will grant the petition and direct the superior court to set aside its orders granting these motions, and dismissing and barring certain cross-complaints, and to enter a new order denying them.

I

INTRODUCTION

The instant action is but one of a number of lawsuits that have arisen in the aftermath of the twin calamities that occurred in the Duffy Street neighborhood of San Bernardino in May 1989: the derailment of a Southern Pacific Transportation Company (Southern Pacific) train on May 12, 1989, followed less than two weeks later by the explosion in an underground pipeline carrying petroleum products.

As a result of the train derailment several tons of trona spilled from the train into the area. The trona was being shipped on the train by Lake Minerals Corporation (Lake Minerals). Southern Pacific contracted with

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

various parties to perform services in the effort to clean up the spillage from the train. IT Corporation (IT), a toxic cleanup firm, was hired by Southern Pacific to clean up the trona as well as spilled diesel fuel. James Dickey Inc. (JIMCO) was hired by IT to operate heavy equipment in this cleanup operation.

Pursuant to a licensing agreement, Calnev Pipe Line Company (Calnev) owned and operated the subject pipeline on Southern Pacific's right-of-way. Following the derailment, Calnev attempted to withdraw the petroleum product from the pipeline and reduce pressure in the derailment area and to inspect the pipeline. It retained Arizona Pipeline Company (Arizona) to assist it in these operations. Calnev claims that Arizona failed to conduct an adequate inspection of the pipeline and certain check valves after the derailment, and may have damaged the pipeline in the course of its post-derailment excavations.[2]

II

FACTUAL AND PROCEDURAL BACKGROUND

A. *Lawsuits.*

Several hundred persons have filed actions claiming personal injury and property damages allegedly caused by the derailment and/or pipeline explosion. One lawsuit alone, Aguilar et al. v. Calnev et al., No 261126, involves three hundred seventy-five plaintiffs claiming such injuries.

The underlying complaint in this action, No. 251310, was brought by Southern Pacific against Calnev in which it seeks a declaration of rights under their licensing agreement, and particularly that under the indemnification provision of the agreement Calnev was obligated to indemnify Southern Pacific for all claims and liabilities arising out of the pipeline explosion. This complaint engendered numerous cross-complaints among additional parties as joint tortfeasors, including ones by and against Arizona, for equitable indemnity based on comparative fault.

Calnev did not cross-complain against Arizona for equitable comparative indemnity and Arizona did not cross-complain against Calnev for similar relief in No. 251310 but in March 1993—after the settlements in this action were reached—Calnev's insurer, Somerset Marine, as assignee of Calnev,

---

[2]The pipeline ruptured where it had been dented. It is not clear whether the dent was caused by the derailment itself or by the use of heavy equipment in the course of the subsequent cleanup or pipeline inspection operations.

filed a separate action against Arizona and its insurer, General Star Indemnity, for equitable indemnity and contribution and also declaratory relief based on an express indemnity agreement contained in the service agreement between Arizona and Calnev (Somerset action). Somerset alleged that it had already paid its insured, Calnev, an amount in excess of $9 million to settle claims and judgments against it arising from the pipeline explosion. In May 1993, Arizona cross-complained for comparative equitable indemnity in the Somerset action against all the other alleged tortfeasors, including the real parties in interest here.

B. *The Settlements.*

In September 1992, all the parties in this action, case No. 251310, except for Arizona reached a settlement of all claims among themselves and subsequently moved for determinations that the settlements were in good faith.

One settlement was reached among Southern Pacific, certain of its London insurers, Calnev, IT and IT's insurer, National Union. IT and National Union paid jointly to Southern Pacific $2.5 million for release of causes of action as to indemnification for cleanup and pipeline explosion related claims, intentional interference with contractual relations, and bad faith. Of this amount, $500,000 was attributed to Calnev's equitable comparative fault claims against IT and $2 million was paid by IT as indemnitor under a written indemnity agreement with Southern Pacific as indemnitee. Calnev paid Southern Pacific $1.5 million for release of causes of action seeking indemnification under the written indemnity provision in the licensing agreement and for pipeline explosion related claims. The settlement provides a complete mutual release between the settling parties and in addition "Calnev assumes the defense and indemnity of Southern Pacific and IT for any and all claims by persons claiming injury or damage arising out of the Duffy St. pipeline explosion (alone or in combination with the train derailment)." As part of this settlement agreement, Southern Pacific and IT assigned to Calnev their rights to sue Arizona.

Lake Minerals entered into a settlement with Calnev whereby Lake Minerals paid Calnev $112,000 in exchange for Calnev's agreement to defend and indemnify Lake Minerals with respect to certain pending litigation, including the within action.

JIMCO entered into a similar settlement with Calnev under which it paid $310,000 in exchange for a mutual dismissal of cross-complaints and "Calnev's agreement to defend and indemnify JIMCO for any additional defense or indemnity obligation resulting from the pipeline rupture."

## C. *The Determination of Good Faith Settlement Motions.*

Motions for determination that these settlements were in good faith were brought by Southern Pacific, IT, Calnev, Lake Minerals and JIMCO on June 11, 1993. They also moved for dismissal of existing comparative indemnity cross-complaints against them and for a bar to all similar future cross-complaints against them. In support of these motions, Calnev argued that it is appropriate to have the good faith settlement determination made in this action because all the alleged joint tortfeasors are parties to this action and not all of them are named in any one of the tort plaintiffs' actions.

The settling parties indicated that their agreements were a reasonable approximation of their "proportionate liability for the totality of the injuries claimed, settled and/or anticipated from the explosion." Calnev contended that the estimate of the ultimate recovery by tort plaintiffs is more accurate here than in most other cases because over $8 million had already been paid out to settle the claims of the vast majority of the tort plaintiffs. Calnev expected that the undetermined liability in cases still pending to bring the total to around $10 million.

JIMCO's attorney indicated in his declaration that the estimated total damages from the explosion were between $7 and $14 million. Southern Pacific has already paid nearly $4 million to persons claiming injury as a result of the explosion. Calnev stated that although it had paid "Southern Pacific $1.5 million under the settlement (and effectively assigned over to Southern Pacific the $500,000 IT ha[d] paid on comparative fault claims), this is a payment on a *written* indemnity claim (akin to an insurance recovery), and it does not reduce what must be viewed as Southern Pacific's satisfied share of comparative liability." Calnev further noted that it is not claiming that this payment will be credited to increase the share Calnev is credited with for comparative fault purposes. It contended that Arizona's offset under section 877 had been fully allocated and protected. In short, Calnev argued that Arizona is entitled to an offset in the amount of all settling parties' contributions totaling $6.5 million.

In moving to have the settlements determined to be in good faith under section 877.6 Calnev also asserted in the trial court that Arizona will suffer no prejudice in having the matter determined in the context of a "tortfeasors only" action as opposed to having the same issue determined on cross-complaints in one or more underlying tort plaintiffs' cases. First, with regard to plaintiffs' cases that have already been settled, it maintains that those plaintiffs have dismissed their cases and released their claims such that there could be no later action against Arizona in which it could be required to pay

more than its adjudicated share of fault. Second, with respect to Arizona's exposure on the pending tort actions, Calnev asserted that Arizona cannot point to any inequity in the court granting the motions because the facts affecting the various joint tortfeasors' proportional fault have been fully developed in this action and the trial court had enough credible information and was in an adequate position to judge whether an equitable sharing of costs among parties at fault was achieved by the settlements.

Calnev further urged that sections "877 and 877.6 deal with the rights of equitable indemnity among joint tortfeasors. The people who count are the joint tortfeasors and their rights against one another. [¶] The role the plaintiff serves is, they simply create the liability, the amount of money, the pot, if you will, that has to be divided up."

Arizona opposed the motions on the ground that pursuant to *Doose Landscape* v. *Superior Court* (1991) 234 Cal.App.3d 1698 [286 Cal.Rptr. 321], the court lacked jurisdiction to dismiss its cross-complaints against Southern Pacific and the other settling parties who, through their assignee, Calnev, continue to sue it. In addition Arizona argued that the trial court could not determine whether the contributions to the settlement fund were "in the ballpark" when there was absolutely no evidence from any of the hundreds of tort plaintiffs as to the potential total recovery.

At the hearing on the section 877.6 motions, the court expressed its belief that it probably knew more about the joint tortfeasors' liability than it would in the "garden-variety case because $8 million has been paid, and I think it's pretty clear there's a lot of . . . , since I'm not handling any of the plaintiffs' cases, I don't have to worry about saying something I would regret later, but I think there's a lot of air in the cases that are left . . . ."

Noting that the settling tortfeasors were entitled to "buy their peace," the hearing court found the settlements to be in good faith. Accordingly, on August 9, 1993, the court filed a written order granting the motions of Southern Pacific, IT, JIMCO, and Lake Minerals determining these settlements to be good faith settlements within the meaning of section 877.6. In addition, the court also granted the motions of Southern Pacific, IT, JIMCO and Lake Minerals to dismiss all cross-complaints against them in case No. 251310, which included Arizona's cross-complaints, and barred "any and all current and future actions and claims by any current and future cross-complainants or any other current or future joint tortfeasors for equitable comparative contribution, or partial or comparative indemnity . . . based upon comparative negligence or comparative fault" against Southern Pacific, IT, JIMCO and Lake Minerals. It ordered JIMCO's cross-complaint against

Arizona dismissed. Further, it took under submission the motions of Southern Pacific and IT to dismiss without prejudice their respective cross-complaints against Arizona and stayed further actions on those cross actions pending further order of the court.[3]

## III

### DISCUSSION

A.  *Propriety of Writ Review.*

We must first deal with the procedural objection raised by Calnev to Arizona's petition for extraordinary writ relief. Calnev contends that, although section 877.6, subdivision (e), specifically provides for review of a good faith settlement determination ruling by writ of mandate, extraordinary relief is not warranted in these circumstances because Arizona has an adequate remedy by appealing from the judgment dismissing its cross-complaints against the real parties in this action. Calnev asserts that the trial court's rulings have terminated this action in all material respects; however, the trial court has not dismissed the cross-complaints against Arizona so that there is not a final judgment from which it can appeal. (*California Dental Assn.* v. *California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 59 [271 Cal.Rptr. 410].)

Even assuming that Arizona can take an immediate appeal and raise the issue of the propriety of the court's good faith determinations (*County of Los Angeles* v. *Guerrero* (1989) 209 Cal.App.3d 1149, 1152, fn. 2 [257 Cal.Rptr. 787]), Calnev ignores the effect that the trial court's ruling barring Arizona's claims for equitable comparative contribution or indemnity on related litigation may have on pending actions, such as the Somerset action as well as the remaining personal injury and property damage tort actions. Those actions are proceeding forward and, as a result, we are persuaded that a prompt resolution of the issue of the propriety of good faith determinations in this action is warranted. (Cf. *Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1490 [13 Cal.Rptr.2d 624].)

B.  *Application of Section 877.6.*

Section 877.6 states in pertinent part: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall

---

[3]The court's written order did not make a determination on Calnev's motion for good faith settlements and did not order any present or future cross-complaints against Calnev, including those by Arizona, for equitable comparative contribution or partial or comparative indemnity based on comparative negligence or comparative fault to be dismissed or barred by the settlements.

be entitled to a hearing on the issue of the good faith of a *settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors* . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution or partial or comparative indemnity based on comparative negligence or comparative fault." (Italics added. Referred to hereinafter for convenience as comparative indemnity.)

■■ Based on the unequivocal statutory language, we conclude that in an action where two or more persons are alleged to be joint tortfeasors, a judicial determination that a settlement between joint tortfeasors was made in good faith does not bar under section 877.6 any nonsettling joint tortfeasor from prosecuting any existing or future claims against any settling tortfeasor for comparative indemnity, because section 877.6 relates only to those settlement agreements "entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors." (§ 877.6, subd. (a).) In the context of tort litigation, the "plaintiff or other claimant" refers to the injured party claimant, and does not include joint tortfeasors named as cross-complainants and cross-defendants in cross-complaints seeking contribution or indemnity and who also may be, as here, a designated plaintiff or complainant in the same action which was initiated as a nontort action. Where the only complainants are joint tortfeasors asserting various indemnity and contribution claims against one another, the statute does not apply. To hold otherwise, would be to rewrite the statute to apply to settlements entered into not only by the tort plaintiff or other claimant and one or more alleged joint tortfeasors, but also to settlements entered into only among and between some joint tortfeasors.[4]

Even if the instant settlements were encompassed by sections 877 and 877.6, an analysis of the policies underlying the good faith settlement procedures contained in those sections compels us to conclude that the "joint tortfeasors only" settlements here do not meet the dual goals of these statutes. ■ Sections 877 and 877.6 seek to promote the equitable sharing of costs among the parties at fault and the encouragement of settlements. (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 871-872 [239 Cal.Rptr. 626, 741 P.2d 124].)

---

[4]We are not alone in questioning the applicability of the statute in this procedural context. (See *Alcal Roofing & Insulation* v. *Superior Court* (1992) 8 Cal.App.4th 1121, 1128 [10 Cal.Rptr.2d 844].)

Calnev contends that we should apply 877.6 even in the unusual procedural context of this case (wherein not one tort plaintiff is a party to the subject settlements) in order to promote the policy of promoting settlements. However, by doing so here there is no assurance that the other policy established by these sections—the equitable sharing of costs among parties at fault—will be served. *Abbott Ford, Inc., supra,* stated that section 877 makes it clear that these two goals are "inextricably linked." "Section 877 establishes that a good faith settlement bars other defendants from seeking contribution from the settling defendant (§ 877, subd. (b)), but at the same time provides that the plaintiff's claims against the other defendants are to be reduced by 'the amount of consideration paid for' the settlement (§ 877, subd. (a)). Thus, while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the nonsettling defendants obtain in return a reduction in their ultimate liability to the plaintiff." (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at pp. 872-873.)

By requiring a settling tortfeasor to settle "in the ballpark" in order to gain immunity from comparative indemnity, the good faith requirement of sections 877 and 877.6 assures that ". . . the nonsettling defendants' liability to the plaintiff will be reduced by a sum that is not 'grossly disproportionate' to the settling defendant's share of liability, thus providing at least some rough measure of fair apportionment of loss between the settling and nonsettling defendants." (*Abbott Ford, Inc.,* v. *Superior Court, supra,* 43 Cal.3d at p. 874.)

With respect to those tort cases that have already been settled, Calnev asserts that the "underlying plaintiffs have dismissed their cases and released their claims such that there could be no later action against Arizona in which it could be unfairly required to pay more than its adjudicated share of fault." But in response Arizona justifiably complains that it and the trial court have had no reliable information regarding the nature of the releases and the parties to the settlements in those actions. Unless those plaintiffs have released Arizona from all liability, they may still pursue their damage claims against it and, by virtue of the court's ruling, Arizona will be barred from seeking comparative indemnity against any of the other alleged joint tortfeasors except Calnev.

For example, Southern Pacific may have paid a tort plaintiff $10,000 to settle the latter's action. Unless the release bars him or her from doing so, that plaintiff may pursue Arizona for $20,000 damages. Although plaintiff's claim would be reduced by Southern Pacific's settlement payment of $10,000, Arizona will have to pay half these damages even though it might

be determined that its comparative fault is only 1 percent. Further, Arizona would be precluded by the trial court's order from cross-complaining against any other of the alleged tortfeasors for comparative indemnity except Calnev. JIMCO, for example, may be 49 percent at fault, but Arizona would have no recourse against it for comparative indemnity even though JIMCO was not even a party to the settlement between the tort plaintiff and Southern Pacific.

Moreover, Calnev and the other settling cross-complainants made no evidentiary showing that the settlements in those tort plaintiffs' cases were within the reasonable range of the settling tortfeasor's proportional share of fault. Calnev contends that a total of $8 million has been paid to settle those claims and that Southern Pacific and IT have paid more than 50 percent of that amount. Calnev asserts that, at the time of the hearing on the "good faith determination" motions, these large sums were "in the ballpark" of the settlors' proportionate share of liability for the total potential liability to all the tort plaintiffs, including those who have settled and those who have not. But the record shows the hearing court had no evidentiary basis for making such a determination because it was not provided a rough approximation of the tort plaintiffs' total recovery in these cases, settled or not settled.[5] (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].)

With respect to the tort plaintiffs' nonsettled and pending claims, the only assurance that Calnev offers that Arizona will not bear an unequal share of costs is that the facts regarding the tortfeasors' proportionate share of liability were fully developed in this declaratory relief action. However, in cases involving a settlement between the tort plaintiff and a joint tortfeasor the nonsettling tortfeasor obtains a tangible benefit in exchange for the extinguishment of his comparative indemnity rights: he obtains a reduction in the plaintiff's recovery against him under section 877. Here Calnev has pointed to no such benefit because the tort plaintiffs, not being parties to the settlements among these joint tortfeasors, are not bound by the settlements.

It appears to be uncontested that these plaintiffs can proceed to trial and obtain judgments against Southern Pacific and the other settling tortfeasors.

---

[5] We question the hearing court's ability to make a competent evaluation of the tort plaintiffs' total potential recovery without their participation in the proceedings. Here the trial court acknowledged that it had no familiarity with the pending tort cases but it simply presumed that "there's a lot of air in the cases that are left." The attorneys' estimates during oral argument of total potential damages ranged from $10 million to $14 million, but these opinions were not reached in a sufficiently adversarial manner which would have entitled them to a presumption they were reasonable. (Cf. *Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at p. 879; *Erreca's* v. *Superior Court* (1993) 19 Cal.App.4th 1475, 1495-1496 [24 Cal.Rptr.2d 156].)

While Calnev observed that it has agreed to indemnify the settling cross defendants for any payment as a result of settlement or judgment with respect to pending injury claims, it, significantly, failed to indicate that such payments would operate as an offset against the comparative indemnity claims in the separate Somerset action against Arizona, or that the settlements limit Somerset Marine's comparative indemnity claims against Arizona to only the portions of the settlements and judgments in future actions which are determined to be attributable to its (Arizona's) comparative fault only and not to the comparative fault of any of the settling tortfeasors.

In other words, Calnev has not asserted that if it pays a judgment of $4 million for Southern Pacific under their settlement agreement, it cannot turn around and sue Arizona on a comparative indemnity cause of action for that amount while at the same time Arizona is precluded by the court order from raising any claim based on Southern Pacific's comparative fault. Calnev points out that the Somerset action is not brought by it but by its insurer in subrogation. There is, however, no showing that Somerset Marine itself is precluded (either by the terms of the settlements or by any court order) from recovering from Arizona any amounts it pays out on Calnev's behalf even though those amounts are paid out because of a judgment or settlement based on Southern Pacific or one of the other settling tortfeasors liability. If Somerset Marine does so, the lower court's ruling and the application of sections 877 and 877.6 would seemingly prevent Arizona from asserting as an affirmative defense the fault of these other tortfeasors, except Calnev.

Similarly, as Calnev itself recognizes, it retains the right to pursue Arizona for comparative indemnity, but it does not acknowledge its recovery is limited only to the judgments or settlements against it and not the other settling parties. To the contrary, it contends "that the relevant policies of law to encourage settlements and fairly allocate tort costs are not violated by, indeed they can only both be served by, the rule allowing settling parties to retain any equitable indemnity rights they have against nonsettling parties such as Arizona."

In short, Arizona could be liable for a substantial proportion of the tort plaintiffs' total damages in excess of its proportionate share of fault without being able to seek comparative indemnity from the tortfeasors other than Calnev. Without a showing that the settlements will operate to assure Arizona will be entitled to an offset under section 877, subdivision (a), as to any future settlements or judgments as well as the offset for claims already paid, then there is no tangible assurance that its ultimate liability will bear any reasonable relationship to its proportionate share of fault. Under these circumstances, we hold that even if these settlements came within the scope of section 877.6, they do not meet one of the twin objectives of that section—equitable sharing of the costs among joint tortfeasors.

Moreover, as to both tort plaintiffs who have settled and tort plaintiffs with pending claims, Calnev has not satisfactorily supported its contention with competent evidence that Arizona's offset under section 877 has been fully allocated between liability issues and tort plaintiffs. This is a necessary requisite to a good faith determination. (*Alcal Roofing & Insulation* v. *Superior Court, supra*, 8 Cal.App.4th at p. 1129.)

As to the tort plaintiffs who have settled and those tort plaintiffs with pending claims, we do not perceive that there is a problem with regard to the allocation of the settlements between the derailment damages and pipeline explosion damages. Arizona cannot be held liable to the tort plaintiffs for injuries and property damages arising out of the derailment alone. But the subject settlements deal only with the apportionment of liability among the settling defendants regarding claims arising out of the pipeline explosion. We note that the required allocation of and evaluation of a monetary amount as to the liability issues and damages for injuries and property damages suffered by the tort plaintiffs due to the derailment alone and to the pipeline explosion alone were not established as part of the settlements, presumably because there was no competent evidence presented on that allocation issue. (See *Abbott Ford, Inc.* v. *Superior Court, supra*, 43 Cal.3d at p. 879; and *Erreca's* v. *Superior Court, supra*, 19 Cal.App.4th 1475, 1488-1492.)

■ As stated in *Erreca's* v. *Superior Court, supra*, 19 Cal.app.4th at pages 1495-1496: "A party seeking confirmation of a settlement must explain to the court and to all other parties, by declaration or other written form, the evidentiary basis for any allocations and valuations made, and must demonstrate that the allocation was reached in a sufficiently adversarial manner to justify the presumption that a reasonable valuation was reached. [Citation.]" Here, no such explanation or evidentiary basis was submitted to the court by Calnev or the other settling cross-defendants.

Finally, as to the tort plaintiffs who settled and the tort plaintiffs with pending claims, the record does not show that any competent evidence was presented on the value of the assignments of comparative indemnity rights by the Southern Pacific and IT to Calnev. Because such assignments may constitute a noncash consideration for settlement and would constitute a part of the consideration paid by cross-defendants Southern Pacific and IT, such valuation was necessary for the court not only to determine if the settlements were in good faith but also to arrive at the proper offset to which Arizona was entitled under section 877, subdivision (a). (*Erreca's* v. *Superior Court, supra*, 19 Cal.App.4th 1475, 1496-1497; *Alcal Roofing & Insulation* v. *Superior Court, supra*, 8 Cal.App.4th at p. 1128.)

Therefore, it is impossible to conclude that Arizona will not ultimately be required to pay a disproportionate amount to any of those plaintiffs who

have settled their claims against Southern Pacific, IT, JIMCO, Lake Minerals or Calnev.

We emphasize that we are not invalidating the settlements (*Alcal Roofing & Insulation* v. *Superior Court, supra*, 8 Cal.App.4th at p. 1129) and we are aware that new forms of settlement and new creative settlement strategies are constantly evolving but not every type of settlement falls within the scope of 877.6 or meets its objectives. ▇ Where, as here, the settling joint tortfeasors have not shown that one of the objectives underlying sections 877 and 877.6—the equitable sharing of costs—can be achieved by these settlements, they cannot invoke section 877.6 in order to bar the nonsettling tortfeasor's action for comparative indemnity against the settling tortfeasors.

Given our conclusion that these settlements are not ones to which the provisions of 877.6 apply, we find it unnecessary to reach petitioner's other objections including that the court had no jurisdiction to dismiss its cross-complaint against Southern Pacific because Southern Pacific as a settling cross-defendant joint tortfeasor was also a nontort plaintiff in the action and that the settlements were prohibited secret settlements.

## IV

### DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside (1) its order determining the subject settlements to be good faith settlements within the meaning of section 877.6, (2) its orders that all cross-complaints in this action are dismissed as against Southern Pacific, IT, JIMCO and Lake Minerals, and that any and all current and future actions and claims by any current and future cross-complainants or any other current or future joint tortfeasors for equitable comparative contribution, or partial or comparative indemnity against Southern Pacific, IT, JIMCO and Lake Minerals, based upon comparative negligence or comparative fault, are ordered barred, and (3) all other related orders, and to issue a new and different order in accordance with the views expressed in this opinion.

Dabney, Acting P. J., and Hollenhorst, J., concurred.