[Nos. G016156, G016730. Fourth Dist., Div. Three. May 30, 1995.]

KAOM, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
C & D COATINGS, INC., et al., Real Parties in Interest.

## COUNSEL

Callahan, McCune & Willis, Richard P. Larriva, Jeffrey M. McConnell, Gibeaut, Mahan & Briscoe, Gary Robert Gibeaut, Nancy Mahan-Lamb and John W. Allen for Petitioners.

No appearance for Respondent.

Cozen & O'Connor, Peter A. Lynch, Wingert, Grebing, Anello & Brubaker, Norman A. Ryan, Shawn D. Morris, Sarah F. Burke, O'Flaherty & Belgum and Robert M. Dato for Real Parties in Interest.

## OPINION

**SILLS, P. J.—** ██    This construction defect case presents the following issue: is a cross-defendant who settles with a cross-complainant, but not the plaintiff, entitled to a determination under Code of Civil Procedure section 877.6[1] that the settlement was in good faith? Yes.

---

[1]Code of Civil Procedure section 877.6 provides: "(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . upon giving notice thereof in the manner provided in subdivision (b) of Section 1005. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced. . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. . . ." All further statutory references are to the Code of Civil Procedure.

I

The operative facts are undisputed. Villa Mira Homeowners Association owns a 212-unit condominium complex in Laguna Niguel. Between September 1985 and June 1988, the association noticed the second-story decking leaked water on underlying units and garages; there were numerous fissures throughout the concrete foundations and sidewalks; and the stairwells connecting the first and second stories were improperly built. As a result of these problems, the association filed the underlying action against the developer for strict liability, breach of implied warranties, and negligence.

The developer cross-complained for express and implied indemnity, contribution, and breach of contract against numerous subcontractors, including Thornton Steel, which installed the stairs and did the steel stringer construction, Lone Star Framing & Lumber, which supplied the lumber and did the framing, KAOM, Inc., which did the sheet metal work, and C & D Coatings, Inc., which did the deck coating work. The subcontractors were not named as defendants in the complaint.[2]

The developer agreed to settle its cross-complaint against C & D Coatings for $67,500, estimating the decks could be repaired for $94,000. However, Lone Star and KAOM objected to the settlement, claiming it would cost about $230,500 to replace the decks. The developer also agreed to settle its cross-complaint against Thornton Steel for $80,000, estimating the stairs could be repaired for $75,000. Lone Star and KAOM objected to this settlement as well, claiming it would cost at least $167,000 to repair the stairs. Neither petitioners nor the association was a party to these settlements.

Pursuant to section 877.6, the developer moved for a judicial determination the settlements were in good faith. Lone Star and KAOM opposed the motions on the grounds that none of the joint tortfeasors was "a plaintiff or other claimant" as that term is defined in section 877.6 and the settlements were not "in the ballpark." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].) After the court approved the settlements, Lone Star and KAOM filed petitions for writs of mandate to set aside the determinations on the ground that section 877.6 does not apply to settlements between a cross-complainant seeking equitable

---

[2]The parties generally concede the cross-defendants cannot now be brought directly into the litigation by the plaintiff because the statute of limitations has run. (See § 337.15.)

indemnity and a cross-defendant.[3] (*Arizona Pipeline Co.* v. *Superior Court* (1994) 22 Cal.App.4th 33, 42 [27 Cal.Rptr.2d 118].) This court consolidated the petitions, issued an alternative writ, and heard the matter at oral argument. We deny relief.

## II

Petitioners claim the resolution of this matter is governed by *Arizona Pipeline*. In that case, numerous claims for personal injuries and property damage were filed when a train derailed and an underground pipeline carrying petroleum products later exploded. A separate action was filed by the railroad company against the owner of the pipeline for declaratory relief and indemnity. After many of the cross-complainants and cross-defendants in the railroad company's action reached settlements between themselves, they moved for a determination under section 877.6 that the settlements were made in good faith. One of the nonsettling cross-defendants, who was not a defendant in the action, objected to the hearing on the ground (among others) that joint tortfeasors are not entitled to a good faith determination under that section. The trial court disagreed. Concluding that settling tortfeasors should be able to "buy their peace," it approved the settlements.

In issuing a writ of mandate setting aside the good faith determinations, the Court of Appeal held ". . . the unequivocal statutory language [of section 877.6] relates only to those settlement agreements 'entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors.' . . . In the context of tort litigation, the 'plaintiff or other claimant' refers to the injured party claimant, and does not include joint tortfeasors named as cross-complainants and cross-defendants in cross-complaints seeking contribution or indemnity . . . . Where the only complainants are joint tortfeasors asserting various indemnity and contribution claims against one another, the statute does not apply." (*Arizona Pipeline Co.* v. *Superior Court, supra,* 22 Cal.App.4th at p. 42, citation omitted;[4] see also *Alcal Roofing & Insulation* v. *Superior Court* (1992) 8 Cal.App.4th 1121, 1128 [10 Cal.Rptr.2d 844] [in dictum, questions applicability of statute].)

We think *Arizona Pipeline* misreads section 877.6. ■ To us, the phrase "plaintiff or other claimant" logically includes a cross-complainant

---

[3]Lone Star clearly lacks capacity to maintain a petition for writ of mandate since it was suspended as a corporation for failure to pay taxes. We will, therefore, dismiss its petition. No one questions KAOM's standing to bring a separate petition or join in Lone Star's petition. Although we have some reservations about KAOM's standing, because facts alleged in the verified petition arguably suggest KAOM is aggrieved by the court's determination, we consider the petition on its merits. (§ 877.6, subd. (e).)

[4]*Arizona Pipeline*'s discussion of section 877.6 was unnecessary to the result in that case because the court found the settlements were not in good faith (22 Cal.App.4th at p. 47), a finding not at issue here.

seeking express or implied indemnity against a cross-defendant. Therefore, a settlement made between a cross-complainant and a cross-defendant—even if it stems from a cross-complaint for equitable indemnity—is entitled to a good faith determination under section 877.6.

Our reading of the statute is buttressed by the history of the contribution legislation and the realities of modern litigation. ■ At common law, there was no contribution between joint tortfeasors. As a result, " 'One of several joint tortfeasors [could] be forced to pay the whole claim for the damages caused by them yet he [could] not recover from the others their pro rata share of the claim.' " *(Tech-Bilt, Inc. v. Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 494, fn. 3.) Recognizing the harshness and inequity of the common law rule, and the damper it placed on reaching settlements, the Legislature enacted the tort contribution legislation. (§ 875 et seq.) The purpose of this legislation was to encourage settlements and assure the equitable allocation of costs among the parties at fault. *(Tech-Bilt, Inc. v. Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 494.)

Although the contribution statutes were obviously written with an eye towards resolving simple litigation (e.g., a complaint by one plaintiff against two or more defendants), nothing in the language of these statutes precludes a cross-defendant who settles with a cross-complainant from taking advantage of the protections afforded by this legislation. ■ More to the point, and contrary to *Arizona Pipeline*'s analysis, we do not understand section 877.6's use of the phrase "plaintiff or other claimant" to preclude those types of settlements from a good faith determination. A cross-complainant who claims equitable indemnity from a joint tortfeasor is the functional equivalent of a plaintiff. It is an "injured party" in multiparty tort litigation and can always bring a separate action for indemnity before or after the plaintiff's claim is resolved.

Moreover, nothing in the legislative history of the statutes suggests a different result. Some years ago, the Supreme Court pointed out that ". . . the Legislature did not conceive of its contribution legislation as a complete and inflexible system for the allocation of loss between multiple tortfeasors. . . ." *(American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 603 [146 Cal.Rptr. 182, 578 P.2d 899], citations omitted), but intended by its enactment to encourage judicial developments in the law "which further the act's principal purpose of ameliorating the harshness and inequity of the old no contribution rule." *(Id.* at p. 601.) Our reading of section 877.6 serves that purpose. It allows cross-defendants to "buy their peace" from the party who brought them into the action.

This is especially important in construction defect cases. In the run-of-the-mill construction defect case, the plaintiff sues the developer in strict

liability. The developer, who has knowledge of the subcontractors' scope of work, then cross-complains against the subcontractors for express or implied indemnity. The subcontractor, who is generally a bit player in a multi-million-dollar project, frequently does not have the wherewithal to vigorously litigate a cross-complaint where its exposure is limited and will look for ways to settle the cross-complaint. In this situation, the developer is usually willing to release the subcontractor if offered a reasonable sum in settlement. The plaintiff, on the other hand, who did not bring the subcontractor into the action, has little incentive to participate in a settlement with a minor cross-defendant. It may simply refuse to deal with the subcontractor or try to blackjack the subcontractor into paying more than its fair share. To require the subcontractor, as *Arizona Pipeline* does, to settle with the plaintiff as a condition of obtaining a good faith determination under section 877.6 would have a chilling effect on settlements in these cases.

We recognize, as petitioners surely do, that cross-defendants routinely settle indemnity cross-complaints without concurrently settling with the plaintiff. And, like all alleged tortfeasors, these cross-defendants settle to completely extricate themselves from the litigation. It creates an artificial and unsustainable distinction to say, as *Arizona Pipeline* does, that a cross-defendant who settles with the plaintiff is entitled to a good faith determination under section 877.6 (*Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 57 [200 Cal.Rptr. 136]), but that a cross-defendant who settles with a cross-complainant cannot. In both instances, the nonsettling parties have notice of the hearing and an opportunity to object to the settlement under the *Tech-Bilt* factors.

The petition for writ of mandate of Lone Star (G016156) is dismissed. The petition for writ of mandate of KAOM (G016730) is denied. Having served its purpose, the alternative writ is discharged. Each party shall bear its own costs.

Crosby, J., and Wallin, J., concurred.