[No. F010150. Fifth Dist. July 28, 1989.]

PIONEER EQUIPMENT COMPANY et al., Cross-complainants and Appellants, v.
R. M. WADE & COMPANY, INC., Cross-defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Borton Petrini & Conron and Dale Dorfmeier for Cross-complainants and Appellants.

Robinson, Palmer & Stanton and Gary Logan for Cross-defendant and Respondent.

OPINION

BEST, Acting P. J.—Luis A. Torres filed a complaint seeking to recover damages he sustained when four of his fingers became entangled in and amputated by the irrigation equipment he was operating. He sought

recovery from R. M. Wade & Company, Inc., the manufacturer of the machine; Kern County Equipment Company; and various Doe defendants on theories of negligence and strict liability.

R. M. Wade & Company manufactured farm equipment. In 1976, some of this irrigation equipment was sold by Kern County Equipment Company. It was thereafter purchased by M & M Farms, Torres's employer. In November of 1977, Western Farm Service, Inc., purchased Kern County Equipment Company's facility in Kern County and continued doing business as Kern County Equipment Company. In 1983, Western Farm Service, Inc., reorganized, and the equipment division became Pioneer Equipment Company. (Hereafter Western and Pioneer are referred to collectively as Pioneer.)

Pioneer filed a cross-complaint against R. M. Wade & Company, Inc., seeking total equitable indemnity. Fireman's Fund Insurance Company, the workers' compensation insurance carrier for M & M Farms, filed a complaint in intervention seeking reimbursement for the sums it had already paid to Torres.

A judicially supervised settlement conference was held. It was agreed that R. M. Wade & Company would pay Torres $225,000 in damages. Pioneer was to pay Torres $15,000. The claim in intervention was not settled and was reserved for a later determination, with Torres agreeing to defend the compensation lien and hold defendants harmless from any lien claim.

Thereafter, R. M. Wade & Company filed a motion for an order determining that the settlement was in good faith. It also sought to dismiss the cross-complaint of Pioneer for indemnity based on the settlement agreement. Wade's attorney, Gary Logan, filed a declaration which stated that the only unresolved issue in the settlement was the complaint in intervention. Nothing was said about the viability of the cross-complaint during the settlement conference. Torres's attorney filed a similar declaration.

Pioneer sought permission of the court to file an amended cross-complaint naming Kern County Equipment Company as a cross-defendant. A ruling on this was deferred until the ruling on the motion to determine the good faith character of the settlement.

One of Pioneer's attorneys, Mr. Grove, was present at the settlement conference. He filed a declaration that he had no intention of settling the cross-complaint as part of the settlement agreement.

At the motion to determine the good faith character of the settlement, all parties and the court agreed the settlement was made in good faith. The

main thrust of the hearing was whether Pioneer's cross-complaint for indemnity was barred by the settlement. The court felt that fairness made it incumbent upon the settling defendant to make it clear it did not give up its cross-complaint for indemnity.

The court granted the motion for an order determining good faith settlement. The court held that the cross-complaint was barred and denied Pioneer's motion to file a second amended cross-complaint. Pioneer appeals from this ruling.

## DISCUSSION

### I

### CAN PIONEER APPEAL FROM THE ORDER BARRING THEIR CROSS-COMPLAINT?*

. . . . . . . . . . . . . . . . . . . . . . .

### II

### DOES CODE OF CIVIL PROCEDURE SECTION 877.6, WHICH BARS CLAIMS FOR TOTAL INDEMNITY AFTER GOOD FAITH SETTLEMENT BY A JOINT TORTFEASOR, APPLY WHEN ALL NAMED DEFENDANTS SETTLED AT THE SAME TIME?

Code of Civil Procedure[1] section 877.6 provides in part: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. . . .

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counter-affidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further

---

*See footnote, *ante,* page 824.
[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

■ Although stipulating that the settlement was a good faith settlement, Pioneer contends that section 877.6 has no application to this case simply because all defendants have settled with the plaintiff. For this reason, Pioneer argues, concerns that the settlement will be disrupted are not applicable and fundamental fairness requires that Pioneer, as only a vicariously liable defendant, should be able to seek indemnity from the culpable defendant, R. M. Wade & Company. Pioneer argues that the court abused its discretion because it did not balance the equities or make findings of fact on the issue.

Pioneer's opening brief was filed 14 days after the Supreme Court issued its opinion in *Far West Financial Corp.* v. *D. & S. Co.* (1988) 46 Cal.3d 796 [251 Cal.Rptr. 202, 760 P.2d 399] (hereinafter *Far West*). In our view, *Far West* is dispositive of Pioneer's contention and arguments.

Review was granted in *Far West* to resolve a conflict among Court of Appeal decisions on the question whether a claim for total equitable indemnity is barred by a good faith settlement. (*Far West, supra,* 46 Cal.3d at p. 799.) The Supreme Court held that section 877.6, subdivision (c), "must properly be interpreted as barring nonsettling tortfeasors from pursuing a claim for total equitable indemnity against a defendant who has entered into a good faith settlement. A contrary conclusion would leave a defendant who has entered into a good faith settlement vulnerable to further litigation and additional liability in many cases and would thereby substantially impair the statutory objective of promoting voluntary settlements." (*Far West, supra,* at p. 800.)

The Supreme Court rejected Far West's argument that section 877.6 does not apply to total indemnity claims because the statute does not expressly refer to such claims. (*Far West, supra,* 46 Cal.3d at pp. 804-809.) It held that section 877.6, subdivision (c), embodies "the entire spectrum of potential equitable indemnity claims." (*Far West, supra,* at p. 809.) "To begin with, it is evident that the statutory objective of promoting settlement agreements would be impaired by an interpretation of section 877.6, subdivision (c) which leaves a tortfeasor who has entered into a good faith settlement vulnerable to further liability for total equitable indemnity. . . . [T]here seems little doubt that the exclusion of claims of total equitable indemnity from the reach of section 877.6, subdivision (c) would create a substantial obstacle to settlement in cases in which a defendant who is contemplating settlement is faced with a claim for total indemnity." (*Id.* at pp. 810-811.)

Pointing to numerous recent decisions involving total indemnity claims, the court did not agree that an exception for claims for total indemnity would affect only a few cases. (*Far West, supra,* 46 Cal.3d at pp. 811-812.) Also, if such an exception existed, nonsettling tortfeasors would be more likely to characterize their potential liability as derivative. (*Id.* at p. 812.) "[T]he very fact that the total indemnity claim remained to be litigated despite a good faith settlement would have already taken its toll in discouraging the potential indemnitor from entering into a settlement agreement with the plaintiff in the first place.

"Furthermore, even when it is clear from the relationship of the settling and nonsettling defendants that the nonsettling defendant *is* vicariously or derivatively liable for the acts of the settling defendant, that factor alone still provides no assurance that a total shifting of loss is warranted under equitable indemnity principles. To begin with, there are many instances in which a defendant who is vicariously liable for another's acts may also bear some direct responsibility for an accident, either on the basis of its own action—for example, the negligent hiring of an agent—or of its own inaction—for example, the failure to provide adequate supervision of the agent's work. In addition, even when a nonsettling tortfeasor's liability may be wholly vicarious or derivative in nature, it does not invariably follow that equitable considerations will, as a matter of law, always call for the total shifting of loss to the more directly culpable tortfeasor." (*Far West, supra,* 46 Cal.3d at p. 812.)

"[T]he fact that a tortfeasor's liability is vicarious does not necessarily distinguish him from other tortfeasors nor does it indicate that the public policies on which tort liability rests justify special dispensation from the good faith settlement rules applicable to other tortfeasors." (*Far West, supra,* 46 Cal.3d at p. 813, fn. 13.)

The court refused to adopt Far West's interpretation of section 877.6, subdivision (c), because the practical result "would be that in many, if not most, cases a tortfeasor who was contemplating settlement with the plaintiff would have to realistically anticipate that even if its settlement agreement were found in good faith, it would still face continued litigation on a cotortfeasor's total indemnity claim." (*Far West, supra,* 46 Cal.3d at p. 814.)

The vicariously liable tortfeasor is protected against harm from an unfair settlement because he may challenge "at the good faith hearing, a settlement in which a clearly culpable defendant attempts 'to buy peace too cheaply at the expense of codefendants who are merely vicariously liable.' " (*Far West, supra,* 46 Cal.3d at p. 815, fn. 14.) The trial court can find the settlement is not in good faith and the less culpable tortfeasor will be able to pursue its indemnity claim. (*Ibid.*) The trial court must consider "whether

the proposed settlement is within the reasonable range of the settling tortfeasor's total proportional liability, taking into account the settling tortfeasor's potential liability for indemnity to the allegedly vicariously liable tortfeasor." (*Id.* at p. 816.)

The Supreme Court concluded: "In sum, in light of the judicial background, the legislative history and the statutory purposes of section 877.6, subdivision (c), we conclude that a tort defendant who has entered into a good faith settlement within the meaning of section 877.6, subdivision (c) is absolved of any further liability *for all equitable indemnity claims,* including claims seeking total equitable indemnity." (*Far West, supra,* 46 Cal.3d at p. 817, italics added.)

Although here R. M. Wade & Company and Pioneer settled at the same time, leaving no nonsettling defendants in the action, we find this to be a distinction without a difference. Pioneer's interpretation would defeat the policy considerations underlying the *Far West* decision. It would leave a tortfeasor who entered into a good faith settlement vulnerable to further liability and would create an obstacle to settlement of cases by discouraging the potential indemnitor from entering into a settlement agreement at all. The settling tortfeasor would face continued litigation rather than being able to buy himself out of the litigation completely. Pioneer has not posited any convincing reasons why this case should be treated differently, and we are unable to discern any reasons to not apply *Far West* to this situation. A tort defendant who enters into a good faith settlement should be "absolved of any further liability for *all* equitable indemnity claims." (*Far West, supra,* 46 Cal.3d at p. 817, italics added.)

■ Pioneer's unfairness arguments were addressed in Justice Eagleson's concurring and dissenting opinion (*Far West, supra,* 46 Cal.3d at pp. 828-831) and were rejected by the majority. Under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], this court is bound to follow the majority decision.

■ Pioneer's argument that the court abused its discretion by failing to consider and make findings of fact that the settlement is within the range of the settling tortfeasor's proportional liability must be dismissed for the clear reason that the good faith character of the settlement was conceded. At the section 877.6 motion hearing, counsel for Pioneer stated, "I am not by any means contending the settlement itself was in bad faith. . . . The settlement has been funded, executed fully, and we have no intention to set it aside. . . . We are not contending proportionality is a problem."

## III

### DID THE TRIAL COURT IMPROPERLY DETERMINE A QUESTION OF FACT WHEN IT FOUND THE INDEMNITY CLAIMS WERE NOT PRESERVED?*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment is affirmed. Respondent shall have its costs on appeal.

Baxter, J., and Dibiaso, J., concurred.

---

* See footnote, *ante,* page 824.