[No. C034291. Third Dist. Jan. 25, 2001.]

WILSHIRE INSURANCE COMPANY, Plaintiff and Appellant, v.
TUFF BOY HOLDING, INC., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III. of the DISCUSSION.

628

**COUNSEL**

Brickwood Law Office, Gary Brickwood and Monique Grandaw for Plaintiff and Appellant.

Moss & Enochian, Larry B. Moss and Mark D. Norcross for Defendant and Respondent.

**OPINION**

**SIMS, Acting P. J.**—Following entry of judgment in favor of defendant Tuff Boy Holding, Inc. (hereafter Tuff Boy) and against plaintiff Wilshire Insurance Company (hereafter Wilshire) on a claim for indemnity, Wilshire appeals from the judgment, challenging the trial court's prejudgment grant

of a motion for good faith settlement between Tuff Boy and the plaintiffs in an underlying tort action, which was consolidated with this indemnity suit. Wilshire contends the good faith settlement procedures of Code of Civil Procedure section 877.6[1] do not apply under the circumstances of this case and, if they do apply, the settlement in this case was not entered in good faith. Tuff Boy argues, among other matters, that Wilshire's appeal must be dismissed because writ review is the exclusive means of reviewing a good faith settlement determination. In the published portion of the opinion, we shall conclude the section 877.6 determination is reviewable on appeal from the judgment, because Wilshire had earlier filed a timely writ petition in this court.[2] We shall further conclude the trial court properly applied section 877.6 to this case, even though there were no nonsettling defendants in the case when Tuff Boy settled and even though Tuff Boy was made a defendant after Wilshire settled. In the unpublished portion of the opinion, we shall conclude the trial court correctly determined that the Tuff Boy settlement was in good faith. We shall therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1996, Rick Cline, a truck driver, was killed in a motor vehicle accident involving another truck, which was owned and operated by Colin Campbell. Campbell, whose vehicle load was over the weight limit and who was driving over the maximum number of hours allowed, with unbalanced brakes, had drifted into the lane for oncoming traffic and was unable to correct in time. Campbell's load of hay hit the oncoming truck, killing Cline, its driver. Wilshire was Campbell's insurer.

The record is unclear, but a declaration from Wilshire's attorney which is part of the record on appeal reveals that heirs of Cline had a claim against Campbell, Wilshire's insured, for wrongful death. The known heirs of Cline made a policy limits demand upon Wilshire for $750,000. At that time, Wilshire knew the weld on Campbell's truck had failed and was attempting to investigate and determine the cause of the failure and the entity responsible. Nonetheless, Wilshire decided to pay the policy limits ($750,000) in order to limit the Cline heirs' potential damages against Campbell, because it appeared the potential damages were significantly higher than the policy limits.

Even though the claims of Cline's known heirs had been settled, under the terms of the settlement agreement Wilshire insisted that a complaint be filed

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] We granted Wilshire's request that we take judicial notice of our record in Wilshire's writ petition to this court seeking timely writ review of the good faith settlement determination (*Wilshire Ins. Co.* v. *Superior Court* (July 1, 1999, C032673) [nonpub. opn.]), which we summarily denied.

by the Cline heirs against Campbell so that Wilshire would be protected from claims by unnamed heirs of Cline.

Consequently, the Cline heirs in December 1996 filed a wrongful death action against Campbell, individually and doing business as C.J. Campbell & Sons (superior court case No. 131463), and an answer by Campbell was filed by Wilshire, despite the earlier settlement.

Thereafter, Wilshire assertedly learned that the weld was defective and that Tuff Boy, which manufactured and sold the trailer containing the weld, was responsible for the weld.

An order authorizing the compromise of the minor heirs' claims against Campbell was entered in February 1997.

On February 21, 1997, a dismissal was filed and entered as to Campbell, the only named defendant in the lawsuit.

The Cline plaintiffs obtained an additional $600,000 from the underinsured motorist insurance carrier for Cline's employer.

On November 4, 1997, the Cline heirs filed an amended complaint adding Tuff Boy as a defendant, under theories of negligence and products liability, but it appears the Cline heirs never prosecuted their claims against Tuff Boy.

On February 4, 1998, Wilshire, as the named plaintiff, filed a complaint for indemnity against Tuff Boy (superior court case No. 134407), seeking to recover the amount it paid to settle the case with the Cline plaintiffs.[3] Upon Tuff Boy's motion, the trial court consolidated the two lawsuits—the Cline plaintiffs' suit and Wilshire's indemnity action.

Tuff Boy reached a settlement to pay the Cline plaintiffs $50,000 in settlement of their lawsuit. On April 2, 1999, the Cline plaintiffs filed a motion for determination of good faith settlement. Evidence supporting the motion included the following:

The California Highway Patrol (CHP) report and Campbell's deposition established the accident occurred when Campbell was driving a semitruck hauling hay. As the road made a right curve, he felt his load shifting and moved to the left to try to get back under it. He saw an oncoming truck,

---

[3]The insurer of a settling tortfeasor may pursue indemnity in a separate action rather than filing a cross-complaint in the underlying tort case. (*American Bankers Ins. Co. v. Avco-Lycoming Division* (1979) 97 Cal.App.3d 732 [159 Cal.Rptr. 70].)

realized he had drifted into the lane for oncoming traffic, and tried to get back into his lane. He thought he made it, but the two tractors touched, and Campbell's load went over, hitting the other truck. Campbell knew the road well, but was fatigued from driving more than 15 hours. This exceeded the number of hours truck drivers are allowed to drive without rest. Additionally, Campbell admitted that at the time of the accident, he knew he was carrying an excessive load. The maximum weight allowed for his vehicle was 80,000 pounds; his load had weighed in at 81,100 pounds. He did not do anything to reduce his load because it was getting late, and he thought he could make it. The brakes of Campbell's truck were out of adjustment at the time of the accident, which he knew from a CHP safety inspection conducted three weeks before the accident. The CHP report noted a problem with a pintle hitch but found no mechanical defect that could have caused the accident[4]

The CHP report concluded Campbell caused the accident and was grossly negligent. Violations that could have contributed to the accident were (1) driving more than 15 hours in one work period (Veh. Code, § 34506; Cal. Code Regs., tit. 13, §§ 1212.5, 1214), (2) unbalanced brakes (Veh. Code, § 26453), and (3) exceeding maximum weight load (Veh. Code, § 35551). (No one asserts Campbell was criminally prosecuted for Cline's death.)

The Cline plaintiffs also submitted a declaration from an accident reconstruction expert, Bahram Ravani, opining the broken weld did not cause the accident.

The Cline plaintiffs also submitted court documents in the case reflecting that the court, in an order for distribution of the Wilshire settlement proceeds among the Cline plaintiffs, had determined the total value of the case to be $1,425,000.

The motion stated confirmation of good faith settlement was being sought because it was known that Wilshire was seeking indemnity from Tuff Boy. The motion argued the settlement was in good faith because (1) even if any liability could be proven against Tuff Boy, there was significant contributory fault by Campbell, and (2) the Cline plaintiffs had already received $1.35 million from Wilshire and the underinsured/excess carriers.

---

[4]Wilshire notes its experts opined the accident was caused not by any "mechanical defect" but by "structural failure" of the weld. Wilshire thus asserts the CHP report finding of no mechanical defect does not preclude the possibility that weld failure caused the accident. However, Wilshire cites no evidence explaining how its experts distinguished between mechanical and structural problems, or that the CHP applied the same distinction.

Wilshire opposed the motion for good faith settlement, arguing section 877.6 did not apply where there were no nonsettling defendants, and even if the statute applied, Tuff Boy's settlement was in bad faith, for the sole purpose of harming Wilshire. Wilshire argued the fact that the plaintiffs felt they obtained a sufficient total recovery from other sources did not render the Tuff Boy settlement in good faith, because the settlement must be in good faith not only with respect to the plaintiff but also with respect to the nonsettling defendants. Wilshire asserted that for purposes of this motion, it was placed in the position of a nonsettling defendant.

In opposition to the motion, Wilshire submitted a declaration from an accident reconstruction expert, Robert Lindskog, who opined "the accident occurred when the left side rail of the semi-trailer failed at a welded joint. This structural failure allowed excessive downward deflection of the left side rail of the flatbed, causing the load of hay to shift. The fact that this downward deflection actually occurred was apparent from the presence of scrapes and gouges in the tire directly beneath the broken rail." Lindskog further opined the excess weight of 1,100 pounds over the 80,000 limit, was "insignificant and was insufficient to cause the load of hay to shift, or to affect the handling of the vehicle." He said the CHP report was based in part on measurement of skid marks, but the skid mark in the photographs did not come from Campbell's truck. Lindskog opined "there were no operating conditions or mechanical defects that could have caused this accident. The accident was most caused [sic] by a structural failure to the weld holding the semi-trailer's left side rail sections together. When this failure occurred, the load shifted left while the truck was in a right turn. This caused the semi-trailer to lean and swing left, and the load of hay bales fell off the trailer and struck the oncoming truck."

Wilshire also submitted a declaration from an engineering consultant, George Tardiff, who said the weld exhibited "a gross lack of penetration through the thickness of the rail. In my opinion this caused the weld joint to be much less strong than a properly welded joint. My examination of the semi-trailer did not reveal any accident trauma which could have caused the rail to fail. It is therefore my opinion that forces imparted to the rail by the load of hay caused it to fail."

Wilshire also submitted a declaration from another expert who opined "there were no mechanical defects that could have caused or contributed to the accident." He did not believe the brake maladjustment was bad enough to have contributed to the accident.

Wilshire submitted interrogatory answers indicating Tuff Boy had insurance with policy limits of $1 million.[5]

Following a hearing, the trial court on May 13, 1999, issued an order granting the motion for good faith settlement. The memorandum of decision stated section 877.6 was applicable, and the settlement was in good faith. The court noted the Cline plaintiffs had secured about 44 percent of their total recovery ($600,000 of $1,350,000) from a nontortfeasor nonparty—the underinsured motorist carrier for the decedent's employer. Based on the court-determined value of the case ($1,425,000), Campbell paid no more than his reasonable and proportionate share (52.6 percent which equaled $750,000 divided by $1,425,000) of the total value of the case. With reference to Wilshire's argument that the settlement was not in good faith as between the two tortfeasors, because Tuff Boy was paying too little in relation to the amount paid by Campbell, the court said it had analyzed the pertinent factors identified in the case law and concluded "to the extent defendant Tuff Boy is paying less than its theoretical proportionate share, that figure is reasonable and in good faith, because liability of defendant Tuff Boy is uncertain and arguably remote. The settlement is not so 'out of the ball park' as to be inconsistent with the equitable objectives of C.C.P. Section 877.6."

Wilshire filed a petition for writ of mandate in this court. We summarily denied it on July 1, 1999, in case *Wilshire Ins. Co. v. Superior Court, supra,* C032673.

 ██ Because the trial court's determination of good faith settlement effectively barred Wilshire's indemnity claim against Tuff Boy, Wilshire and Tuff Boy stipulated to entry of judgment to facilitate appeal.[6] Wilshire appeals from the judgment entered on September 28, 1999.

## DISCUSSION

### I. *Appealability*

██ We first dispose of Tuff Boy's motion to dismiss the appeal. Tuff Boy argues writ review is the exclusive means for review of a trial court

---

[5]In opposition to the motion, Wilshire also submitted its own attorney's declaration asserting that the CHP officer who prepared the accident report testified in deposition that it was speculation on his part as to whether the violations listed in the CHP report did or did not contribute to the accident. The attorney's declaration made other assertions as to the contents of the CHP officer's deposition, which the attorney said could not be transcribed in time for this court proceeding. Tuff Boy objected to the attorney's statements on hearsay grounds. They clearly were hearsay, and we disregard them. We note Wilshire gave no indication as to why they could not get a declaration from the officer himself to submit to the court.

[6]The stipulated judgment, made to hasten appeal rather than settle the dispute, is appealable. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

determination of good faith settlement under section 877.6[7] and the determination is not subject to postjudgment appellate review. We disagree.

Tuff Boy relies on subdivision (e) of section 877.6 (hereafter section 877.6(e)), which provides: "(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20

---

[7]Section 877.6 provides: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into·by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

"(2) In the alternative, a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. The application shall indicate the settling parties, and the basis, terms, and amount of the settlement. The notice, application, and proposed order shall be given by certified mail, return receipt requested. Proof of service shall be filed with the court. Within 25 days of the mailing of the notice, application, and proposed order, a nonsettling party may file a notice of motion to contest the good faith of the settlement. If none of the nonsettling parties files a motion within 25 days of mailing of the notice, application, and proposed order, the court may approve the settlement. The notice by a nonsettling party shall be given in the manner provided in subdivision (b) of Section 1005. However, this paragraph shall not apply to settlements in which a confidentiality agreement has been entered into regarding the case or the terms of the settlement.

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any conteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

"(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow.

"(1) The court shall, within 30 days of the receipt of all materials to be filed by the parties, determine whether or not the court will hear the writ and notify the parties of its determination.

"(2) If the court grants a hearing on the writ, the hearing shall be given special precedence over all other civil matters on the calendar of the court except those matters to which equal or greater precedence on the calendar is granted by law.

"(3) The running of any period of time after which an action would be subject to dismissal [for lack of prosecution] shall be tolled during the period of review of a determination pursuant to this subdivision."

days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow."

In *Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130 [87 Cal.Rptr.2d 108], the court held that a party aggrieved by a good faith determination "may not forgo writ review and seek instead to have the determination reviewed for the first time in an appeal from the final judgment arising out of the trial of plaintiff's claims . . . ." (*Id.* at pp. 1136-1137.) The court expressly declined to decide whether a party who had petitioned for a writ, and had the writ summarily denied, could later appeal from the judgment. (*Id.* at p. 1137, fn. 4.)

The holding of *Main Fiber Products* does not bar Wilshire's appeal here because, as we have recounted, Wilshire timely petitioned this court for writ review, and the petition was summarily denied.

*Main Fiber Products* pointed out that in *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549 [29 Cal.Rptr.2d 460] at page 552 and in *Rohr Industries, Inc. v. First State Ins. Co.* (1997) 59 Cal.App.4th 1480, 1485-1486 [69 Cal.Rptr.2d 872], the courts had opined in dicta that a good faith determination could be reviewed only by a timely writ petition. (*Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency, supra,* 73 Cal.App.4th at p. 1135.) We respectfully decline to follow that dicta, primarily because the courts in *Housing Group* and *Rohr* did not consider the legislative history of section 877.6(e).

That legislative history was copiously canvassed and analyzed in *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413 [97 Cal.Rptr.2d 752] (review den.), where the court concluded that "while the Legislature viewed a writ petition *before* trial as a *preferable* means of reviewing good faith settlement determinations, section 877.6(e) does not foreclose postjudgment review." (*Id.* at p. 1423, italics in original.)[8] We agree with the analysis and conclusion of *Maryland Casualty Co.*

In addition to the legislative history canvassed by *Maryland Casualty Co.*, we resort to the venerable rule of statutory construction that, in construing a statute, a court may consider other statutes that might bear on the meaning of the statute at issue. (*People v. Corey* (1978) 21 Cal.3d 738, 743 [147 Cal.Rptr. 639, 581 P.2d 644].) We note that the Legislature knows how to make writ review the exclusive mode of review if it wants to.

---

[8]In *Maryland Casualty Co.*, the appellant had sought timely review by way of a petition for writ of mandate, which had been summarily denied. (*Maryland Casualty Co., supra,* 81 Cal.App.4th at p. 1416.)

For example, section 405.39, applicable to an order expunging a notice of lis pendens, provides in relevant part: "No order or other action of the court under this chapter shall be appealable. Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate."

Likewise, section 170.3, subdivision (d), provides "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." This language precludes appeal and makes writ review the sole means of challenge. (*People v. Hull* (1991) 1 Cal.4th 266 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

Similarly, Business and Professions Code section 2337, concerning review of a trial court's determination regarding revocation or suspension of a medical license, provides "[n]otwithstanding any other provision of law, review of the superior court's decision shall be pursuant to a petition for an extraordinary writ." *Leone v. Medical Board* (2000) 22 Cal.4th 660 [94 Cal.Rptr.2d 61, 995 P.2d 191] held Business and Professions Code section 2337, which bars an appeal and makes writ review the sole review, is not unconstitutional.

Finally, *Powers v. City of Richmond* (1995) 10 Cal.4th 85 [40 Cal.Rptr.2d 839, 893 P.2d 1160], held writ review was the exclusive review for trial court decisions concerning requests to compel production of records under the Public Records Act, Government Code section 6259, which provides the trial court's order directing or refusing disclosure "is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. Upon entry of any order pursuant to this section, a party shall, in order to obtain review of the order, file a petition within 20 days . . . ."

The foregoing statutes clearly and unequivocally limit review to writ review. Their language stands in stark contrast to section 877.6(e), which provides that a party aggrieved by a good faith settlement "may" petition the proper court for a writ of mandate.

Here, as we have noted, Wilshire sought timely writ review in this court. In these circumstances, we conclude the trial court's good faith settlement determination is subject to appellate review on appeal from the judgment.

## II. *Section 877.6 Applies To This Case*

### A. *Nonsettling Defendants*

Wilshire first argues section 877.6 does not apply because there is no "nonsettling defendant," by which Wilshire means a defendant who has not yet settled with the plaintiff. We disagree.[9]

Preliminarily, we note that, contrary to the contentions of both parties, the issue has not been decided by an appellate court construing the current statutory language.

Though not cited by the parties, we note section 877.6 has been held applicable where all named defendants settled at the same time. (*Pioneer Equipment Co. v. R. M. Wade & Co.* (1989) 212 Cal.App.3d 824 [260 Cal.Rptr. 815].) However, the case predated enactment of subdivision (a)(2) of section 877.6, which expressly refers to "nonsettling parties" and which forms a basis for Wilshire's argument. (See fn. 7, *ante*; see also Stats. 1992, ch. 876, § 6, p. 4073.)

Section 877.6 has been applied where a defendant settled after other defendants settled, though without discussion of the matter. Thus, Tuff Boy cites *Regal Recovery Agency, Inc. v. Superior Court* (1989) 207 Cal.App.3d 693 [255 Cal.Rptr. 34], where an underlying tort suit was filed against a bank, a towing company, and a repossession company. The towing company settled first and obtained a section 877.6 determination. (207 Cal.App.3d at p. 694.) The bank settled next and obtained a section 877.6 determination. (207 Cal.App.3d at p. 694.) The repossession company then settled, but since there were no cross-complaints, it did not have the settlement confirmed. After the underlying suit was dismissed, the towing company filed suit against the repossession company for indemnity or contribution. (*Ibid.*) The repossession company filed a motion for good faith settlement, but the trial court believed it had no jurisdiction to decide the good faith of a settlement reached in the dismissed case. The appellate court disagreed and issued a writ directing the trial court to consider the motion. (*Id.* at p. 695.) *Regal Recovery* is not authoritative on the issue before us, however, because no contention was raised that the last defendants to settle could not use section 877.6.

---

[9]We note that throughout its appellate brief, Wilshire relies on tentative comments made by the trial court, from which the trial court departed in its final ruling. Wilshire argues the trial court had it right in its tentative opinion. The trial court's tentative opinion has no relevance on appeal. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 9, pp. 546-547.)

Tuff Boy also cites *Britz, Inc. v. Dow Chemical Company* (1999) 73 Cal.App.4th 177 [86 Cal.Rptr.2d 188], where a joint tortfeasor settled with the plaintiff, obtained a section 877.6 determination, was dismissed from the case, and dismissed its indemnity cross-complaint against its codefendants. (73 Cal.App.4th at p. 179.) Subsequently, the codefendants settled with the plaintiff and, after notice to the joint tortfeasor, obtained a section 877.6 determination. The appellate court held the section 877.6 determination barred the joint tortfeasor from pursuing a separate indemnity action against its former codefendants, though the joint tortfeasor was not a party at the time of the section 877.6 determination. (73 Cal.App.4th at p. 179.) *Britz* did not consider or decide the issue before us.

Wilshire cites cases for the supposed proposition that the analysis of whether a settlement was made in good faith requires the presence of a "nonsettling defendant." However, the cited cases do not so hold. Most of the cases merely involved nonsettling defendants; they did not hold that the presence of a defendant who had not yet settled with the plaintiff was required. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337 [45 Cal.Rptr.2d 581] [indemnity cross-defendant, though not named as a defendant by plaintiff, was authorized to bring motion for determination of good faith of its settlement with plaintiff]; *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822 [239 Cal.Rptr. 846] [in personal injury action against other driver and public entities in charge of road where accident occurred, public entities were entitled to move for good faith determination of settlement with plaintiff, which consisted of plaintiff's dismissal of action against public entities in exchange for a waiver of costs]; *Horton v. Superior Court* (1987) 194 Cal.App.3d 727, 733 [238 Cal.Rptr. 467] [settlement judge did not abuse discretion by participating in subsequent hearing to determine good faith of settlement]; *Southern Cal. Gas Co. v. Superior Court* (1986) 187 Cal.App.3d 1030, 1036 [232 Cal.Rptr. 320] [settlement between plaintiffs and some defendants unfairly impaired rights of nonsettling defendants by failing to assure they would receive credit for value of assigned insurance-policy rights against any eventual adverse judgment].)

■ Cases are not authority for propositions not considered or decided. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

■ Wilshire also cites *Hartford Accident & Indemnity Co. v. Superior Court* (1995) 37 Cal.App.4th 1174 [44 Cal.Rptr.2d 126]. There, a developer had an action for indemnity against a chimney builder for defective work, in which the defendant's liability insurer declined the defense. The trial court confirmed the good faith of a settlement between the developer and the

defendant, whereby the settlement figure was for over $7 million, the developer agreed not to execute against the defendant for more than $12,500, and the defendant assigned its rights against its insurer to the developer and agreed to cooperate with the developer in pursuing the claims against the insurer. (*Id.* at p. 1177.) The appellate court reversed, holding section 877.6 was inapplicable because the action involved only one tortfeasor/obligor; the insurer was not a party to the underlying action, a joint tortfeasor or a co-obligor on a contract debt. (37 Cal.App.4th at p. 1178.)

While acknowledging the *Hartford* facts are distinguishable, Wilshire quotes selected portions of the following paragraph in *Hartford*: "[The developer] correctly observes that section 877.6, by its terms, applies when '. . . it is *alleged* that two or more parties are joint tortfeasors or co-obligors . . . .'[10] [Citation.] Use of the word 'alleged' in this context does not mean, however, that section 877.6 proceedings are appropriate whenever a complaint names joint tortfeasors, even when only one tortfeasor is made a party. Subdivision (c) of section 877.6, which states the consequences of a section 877.6 ruling, demonstrates that the section applies only to actions involving both settling and nonsettling tortfeasors or co-obligors: 'A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor . . . .' [Citation.] Read in context, the word 'alleged' in the statute's first sentence merely acknowledges that the party need not be found liable in tort; allegations are sufficient. It is essential, however[,] that the action involve *two or more parties* who are at least alleged to be joint tortfeasors or co-obligors and that some, but not all, of the parties have settled." (*Hartford Accident & Indemnity Co. v. Superior Court, supra,* 37 Cal.App.4th at pp. 1178-1179, original italics.)

This language has no bearing on the case before us. It merely reflects that there must be some party in the case who is not a party to the settlement for which trial court confirmation is being sought. In *Hartford*, the insured was the only party who was alleged to be liable as a tortfeasor. Here, there were two parties who were alleged to be joint tortfeasors—Campbell (in whose shoes Wilshire stands) and Tuff Boy.[11] Campbell (Wilshire) was not a party

---

[10]The developer argued the allegation of Doe defendants satisfied the requirement for multiple tortfeasors. (*Hartford Accident & Indemnity Co. v. Superior Court, supra,* 37 Cal.App.4th 1174, 1178.)

[11]Subdivision (c) of section 877.6 provides that a good faith determination "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (See fn. 7, *ante.*) We recognize that Wilshire is not a tortfeasor but is rather the insurer of a tortfeasor. However, Wilshire makes

to the settlement between the Cline plaintiffs and Tuff Boy. Thus, *Hartford* does not help Wilshire.

When we independently examine section 877.6 and its goals, we conclude the trial court correctly applied the statute for a variety of reasons.

First, the language of the statute supports its application to this situation. Nothing in section 877.6 (fn. 7, *ante*) supports Wilshire's contention that the statute does not apply where there are no nonsettling defendants. Section 877.6 entitles "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors" to a hearing on the issue of the good faith of a settlement entered into by the plaintiff and "one or more alleged tortfeasors." The only references to "nonsettling party" appear in subdivision (a)(2) of section 877.6, which provides as an alternative to the motion procedure that the settling party may file with the court an application and proposed order, at which point a nonsettling party may file a motion to contest the settlement. (See fn. 7, *ante*.) "Nonsettling party" as used in subdivision (a)(2) merely refers to a defendant who is not a party to the particular settlement for which a good faith determination is being sought. Subdivision (a)(2) does not require that there be defendants who have not settled with the plaintiff at the time of a good faith determination. Construed in its entirety, the language of section 877.6 envisions that a later-added defendant or the last defendant to settle can use section 877.6 to extinguish indemnity claims by joint tortfeasors or co-obligors who have already settled.

A second reason for applying section 877.6 to this situation is that the goals of the statute are furthered. Those goals are the equitable sharing of costs among the parties at fault and the encouragement of settlements. (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 872 [239 Cal.Rptr. 626, 741 P.2d 124].) In determining that a settlement is made in good faith, the trial court must find, among other things, that a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be. (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159].) That rule was applied here. The good faith settlement determination in this case furthered the equitable sharing of costs because it allocated the lion's share of liability to Wilshire's insured, Campbell, who plainly was most at fault. The good faith determination also encouraged the settlement of the plaintiff's action against Tuff Boy, because it is unlikely that Tuff Boy, whose liability was tenuous,

---

no claim that it does not stand in the shoes of its insured for purposes of section 877.6. Consequently, we do not consider the matter further.

would have settled with the plaintiffs without a good faith determination. Rather, facing a trial of Wilshire's indemnity claim, Tuff Boy would have gone to trial with plaintiffs in hopes of establishing a complete absence of liability for Cline's death.

Wilshire argues that in order for section 877.6 to apply, there must be at least one nonsettling defendant, because the purpose of the good faith determination is to assure that a nonsettling defendant is only held financially responsible for its proportionate share of liability. The nonsettling tortfeasor obtains a tangible benefit in exchange for the extinguishment of his comparative indemnity rights; he obtains a reduction in the plaintiff's recovery against him under section 877.[12] (*Arizona Pipeline Co. v. Superior Court* (1994) 22 Cal.App.4th 33, 43 [27 Cal.Rptr.2d 118].) According to Wilshire, application of section 877.6 in this case extinguishes its indemnity rights against Tuff Boy, without conferring any benefit to Wilshire, because there will be no future recovery against Wilshire to be offset by the settlement paid by Tuff Boy. Wilshire quotes language in *Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th 33, that " 'while a good faith settlement cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, the nonsettling defendants obtain in return a reduction in their ultimate liability to the plaintiff.' " (*Id.* at p. 43.)

However, *Arizona Pipeline* did not consider or hold that section 877.6 is inapplicable where all defendants have settled with the plaintiff. The settlement agreement in *Arizona Pipeline* was between all but one of multiple alleged joint tortfeasors, resolving indemnity claims between themselves in the context of a declaratory relief action brought to resolve indemnity claims between parties alleged to be tortfeasors in an underlying tort action. The injured-party plaintiffs were not parties to the settlement for which judicial confirmation was being sought. The Fourth District held section 877.6 did not apply, because the statute expressly embraces only settlement

---

[12]Section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.

"(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

"(c) This section shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves. . . ."

agreements entered into by the plaintiff/claimant and one or more alleged tortfeasors or co-obligors, and "plaintiff or other claimant" as used in section 877.6 referred to the injured party in the underlying tort. (*Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th at p. 42; but see, *KAOM, Inc. v. Superior Court* (1995) 35 Cal.App.4th 549 [41 Cal.Rptr.2d 310] [disagreeing with *Arizona Pipeline*].)

*Arizona Pipeline v. Superior Court, supra,* 22 Cal.App.4th 33, did go on to observe that application of section 877.6 to "joint tortfeasor only" settlements would not serve the two "inextricably linked" goals of sections 877 and 877.6—promotion of the equitable sharing of costs among the parties at fault, and encouragement of settlement. (22 Cal.App.4th at pp. 42-43.) In cases involving settlement between the tort plaintiff and a joint tortfeasor, the nonsettling tortfeasor obtains a tangible benefit in exchange for extinguishment of his comparative indemnity rights; he obtains a reduction in the plaintiff's recovery against him under section 877. (22 Cal.App.4th at p. 44.) Application of section 877.6 to a settlement between tortfeasors only would promote settlement, but there was no assurance equitable sharing of costs among the tortfeasors would be promoted, because the tort plaintiffs who had not yet settled were not parties to the settlements among the joint tortfeasors, hence were not bound by the settlements. (*Arizona Pipeline, supra,* 22 Cal.App.4th at pp. 43-44.) In the case before us, no such uncertainties interfere with equitable sharing of costs among tortfeasors.

Moreover, we perceive little equity in Wilshire's arguments. Thus, to the extent Wilshire asserts that the rights of nonsettling defendants are not protected, Wilshire is asserting unfairness to someone other than Wilshire, because Wilshire settled. Indeed, there was no unfairness to any nonsettling defendants because there were none. Wilshire also argues unfairness to itself, on the ground there will be no future recovery against Wilshire to be offset by the settlement paid by Tuff Boy. However, that consequence is not attributable to the fact that there were no nonsettling defendants left in the case when Tuff Boy settled. Rather, Wilshire's inability to reduce its liability to the plaintiffs by the amount of the Tuff Boy settlement is wholly attributable to the fact that Wilshire earlier settled with the plaintiffs for a sum certain. Thus, having settled for a sum certain, Wilshire would not have been able to reduce its liability to the plaintiffs even if there had been nonsettling defendants in the case when Tuff Boy settled. We therefore conclude Wilshire has suffered no unfairness and the trial court properly applied section 877.6 to bar its indemnity claims against Tuff Boy.

B. *Section 877.6 Applies to Later-named Defendants*

Wilshire contends section 877.6 does not apply where it would bar an action for indemnity by an insurer (who previously settled with the plaintiff

in order to limit its insured's potential exposure) against a joint tortfeasor who was not a named defendant at the time of the insurer's settlement. Even assuming this contention was not waived by the stipulated judgment (as urged by Tuff Boy), we disagree with Wilshire.

We note Wilshire was aware of the weld failure at the time Wilshire reached its own settlement with the plaintiff, hence presumably took that into consideration in evaluating its insured's exposure to liability (though Wilshire asserted it did not know the weld was defective until after it settled).

In any event, Wilshire provides no legal analysis which supports its position. Wilshire does not argue that the language of section 877.6 somehow supports this claim. Wilshire cites *Sears, Roebuck & Co. v. International Harvester Co.* (1978) 82 Cal.App.3d 492 [147 Cal.Rptr. 262], as allowing a settling concurrent tortfeasor to pursue a right of partial indemnity asserted by a presettlement complaint against a party not named by the plaintiff. Although *Sears* predated enactment of sections 877 and 877.6, Wilshire cites *Bolamperti v. Larco Manufacturing* (1985) 164 Cal.App.3d 249, 255 [210 Cal.Rptr. 155], as holding the *Sears* rule remains applicable after enactment of the statutes. However, these cases merely stand for the proposition that an indemnity claim survives a settlement by the defendant who is seeking indemnity. The settling defendant need not file a cross-complaint in the principal suit but may file its own indemnity action, and the principal lawsuit does not operate as res judicata or collateral estoppel to bar the indemnity claim. (*Bolamperti, supra*, 164 Cal.App.3d at p. 253.) Neither case addressed the issue before us.

Wilshire notes that at the time it settled with the plaintiff, it had the right to file an indemnity action against Tuff Boy. Wilshire argues the fact Tuff Boy was later added as a defendant and paid a "token amount" in settlement, should not extinguish Wilshire's right to seek indemnity. In effect, Wilshire is arguing that it is unfair to apply section 877.6 because this settlement was in bad faith. That is not a reason to hold the statute inapplicable, but goes to the merits of the good faith determination.

We conclude section 877.6 applies to the circumstances of this case.

III. *No Abuse of Discretion in Trial Court's Decision**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, at page 627.

## DISPOSITION

The judgment is affirmed. Tuff Boy shall recover its costs on appeal.

Nicholson, J., and Raye, J., concurred.