Filed 8/1/14  Cal-Murphy LLC v. Hines Interests Limited Partnership CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAL-MURPHY LLC et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>HINES INTERESTS LIMITED PARTNERSHIP et al.,<br><br>        Defendants and Respondents. | A137609<br>A139772<br><br>(San Francisco City and County Super. Ct. No. CGC08473750) |

In these consolidated appeals, the nonprevailing plaintiffs challenge three orders awarding the prevailing defendants attorney fees and costs.  We affirm two of the orders; we modify the third slightly and affirm it as modified.

## FACTUAL BACKGROUND

In 2004, a written contract (the Lease) was executed between National Office Partners Limited Partnership, assignor to respondent NOP 560 Mission LLC (NOP), and Murphy's Deli Franchising, Inc. (Murphy's Deli), leasing premises to Murphy's Deli for the operation of a restaurant.  Section 7.13 of the Lease addressed attorney fees in the event of a lawsuit:  "If either party places the enforcement of this Lease, or any part thereof . . . in the hands of an attorney or collection agency, or files suit upon the same, or seeks a judicial declaration of rights hereunder, the prevailing party shall recover its reasonable attorneys' fees, court costs and collection agency charges."

1

Section 5.07 of the Lease addressed assignment or sublease of the Lease. It provided: "Any assignee shall assume in writing, for the express benefit of [NOP], all of the obligations of [Murphy's Deli] under this Lease, provided that no such assumption shall be deemed a novation or other release of the prior Tenant." The Lease further provided: "Any assignment or subletting that conflicts with the provisions hereof shall be void. No consent by Landlord to any subletting or assignment shall constitute a consent to any other assignment or subletting nor shall it constitute a waiver of any of the provisions of this Section 5.07 as they apply to any such future sublettings or assignments."

Murphy's Deli subsequently subleased the leased premises to plaintiffs and appellants Najeeb Shihadeh, Mary Christina Shihadeh, and George Omran (the Individual Plaintiffs). Under the terms of the written sublease (the Sublease), the Individual Plaintiffs agreed "to comply with each and every covenant, condition and agreement contained in [the Lease] . . . to be observed and complied with by [Murphy's Deli]." The Sublease further provided: "No further sublease or assignment of this Sublease shall be effective without written consent of [Murphy's Deli]."

According to the operative fifth amended complaint, the Individual Plaintiffs assigned the Sublease to plaintiff and appellant Cal-Murphy, LLC (Cal-Murphy).[1] Cal-Murphy did not assume in writing the obligations of the Lease and Murphy's Deli did not consent in writing to the assignment. However, Cal-Murphy operated a restaurant on the leased premises, paid rent, and was recognized by NOP as the sublessee of the Lease.

## PROCEDURAL BACKGROUND

In 2008, Cal-Murphy and the Individual Plaintiffs sued NOP and others on a number of contract and tort causes of action.[2] All causes of action were brought on

---

[1]     Najeeb Shihadeh and George Omran are among the members of Cal-Murphy.

[2]     Details regarding the underlying dispute are not relevant to this appeal, but are set forth in *Cal-Murphy, LLC v. MG Restaurants, Inc.* (Apr. 30, 2014, A136198 & A136854) (nonpub. opn.).

2

behalf of all plaintiffs.  The prayer for relief sought for all plaintiffs, "as their interests may appear," various remedies including damages.  The complaint was amended multiple times.  Each iteration of the complaint alleged all causes of action on behalf of all plaintiffs, and prayed for relief for all plaintiffs "as their interests may appear."  On June 24, 2011, over the Individual Plaintiffs' objection, the trial court granted NOP's demurrer to the Individual Plaintiffs' claims for lack of standing.[3]  The following year, Cal-Murphy's claims were defeated and judgment in favor of NOP and another defendant and respondent, Hines Interests Limited Partnership (Hines), was entered.

## A. COSTS

NOP and Hines filed two memoranda of costs pursuant to Code of Civil Procedure section 1032, one seeking costs from Cal-Murphy and the other seeking costs incurred through June 24, 2011, from the Individual Plaintiffs.  The Individual Plaintiffs moved to strike or tax these costs on the grounds that they were merely "spectators" to the litigation, only minimal litigation activity involved them specifically, and the defendants failed to mitigate their damages by delaying their demurrer to the Individual Plaintiffs' claims.  Among other arguments, the Individual Plaintiffs contended they were named only as part of the "chain of title" of the Lease.

The trial court rejected the Individual Plaintiffs' arguments and awarded NOP and Hines the full amount of costs sought.  At the hearing, the trial court explained:  "This chain of title argument . . . makes no sense, unless counsel for the [I]ndividual [P]laintiffs believed that for some reason the individuals belonged in the case to preserve the rights of others in the so-called chain of title, which would then render them appropriate parties for all of it, which would then obviate the argument that they were just bystanders. [¶] . . . [¶] In addition, if the rule were that a prevailing party has to justify its keeping parties in the case when it might have been able to knock them out, I don't see how a court could enforce that.  It would involve an explanation by the prevailing party as to why it did or

---

[3]     The Individual Plaintiffs unsuccessfully appealed that ruling, among others. (*Cal-Murphy, LLC v. MG Restaurants, Inc., supra,* A136198 & A136854.)

did not implement a strategy that it didn't start, that is, the inclusion of individual parties. [¶] And I don't see how I could delve into the thought processes of counsel in order to figure out when and whether demurrers should have been filed or other actions taken."

## B. ATTORNEY FEES

NOP also moved for contract-based attorney fees pursuant to Civil Code section 1717 (section 1717) against Cal-Murphy and the Individual Plaintiffs, seeking from the Individual Plaintiffs only fees incurred through June 24, 2011. The Individual Plaintiffs opposed the motion on the same grounds as their challenge to NOP's costs, as well as on the additional ground that they could not be liable for contract-based fees. After the first hearing, the trial court requested supplemental briefing on the issue of the Individual Plaintiffs' liability for attorney fees, and a second hearing was held.

The trial court awarded NOP fees against Cal-Murphy for nearly $2.5 million, a ruling not contested in this appeal. The trial court also issued a detailed decision finding the Individual Plaintiffs jointly and severally liable with Cal-Murphy for approximately $1.4 million of those fees—the amount incurred prior to June 24, 2011.[4] After setting forth the factual and legal background, the trial court's written order explained: "While the Individual Plaintiffs assert that NOP understood that they had no individual rights under the Lease, the operative documents arguably render them the franchisee-subtenant under the Lease. The Sublease so states, and there are arguments that the assignment of the Sublease by the Individual Plaintiffs to Cal-Murphy was neither approved as required by the Sublease, nor consummated by a writing. This would render the question of who is the franchisee under the Lease at least colorable."

With respect to the Individual Plaintiffs' involvement in the litigation, the trial court's written order stated: "[T]he Individual Plaintiffs asserted contract claims under the Lease throughout this litigation. Despite some claims of a lack of interest in the relief

---

[4] The Individual Plaintiffs note the trial court previously issued two tentative decisions on this issue in their favor. However, "[t]he trial court's tentative opinion has no relevance on appeal." (*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 638, fn. 9.)

sought, they did not take themselves out of the case, which required this court to sustain a demurrer as to their standing. It seems clear that rather than being 'spectators' to this litigation, at a minimum the Individual Plaintiffs have been on the bench ready to play as needed. In order to be ready to do so, they retained colorable claims of contract rights under the Lease upon which had they prevailed, would have given them a right to attorney's fees under the Lease. [¶] The Individual Plaintiffs' position in this case goes far beyond a bare allegation of a right to attorney's fees. It appears that by design, they remained ready to assert individual claims based on documents, other claimed facts and arguments that, if accepted, would have entitled them to contract remedies, including attorney's fees, against NOP. Under Section 1717, as analyzed above, the Individual Plaintiffs are each responsible for NOP's attorney's fees under the Lease."

## C. FEES ON FEES

Following the trial court's fee award, NOP filed a supplemental motion seeking an award of attorney fees for time spent on fee-related litigation, or "fees on fees." NOP also sought fees for work opposing a motion to reopen discovery filed by Cal-Murphy during the fees litigation. The trial court awarded NOP the full amount of fees requested against all plaintiffs jointly and severally.

## DISCUSSION

## I. THE INDIVIDUAL PLAINTIFFS' LIABILITY FOR ATTORNEY FEES

Section 1717 provides a reciprocal right to attorney fees for contracts containing attorney fee provisions.[5] "[T]he 'determination of the legal basis for an award of attorney fees' is a 'question of law' which the reviewing court will examine de novo." (*Blickman*

---

[5] Section 1717, subdivision (a), provides in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

*Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894
(*Blickman Turkus*).)

"As a general rule, attorney fees are awarded [pursuant to section 1717] only when the action involves a claim covered by a contractual attorney fee provision and the lawsuit is between signatories to the contract. [Citation.] [¶] Under some circumstances, however, the reciprocity principles of Civil Code section 1717 will be applied in actions involving signatory and nonsignatory parties." (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379–380, fn. omitted.) As relevant here, "[w]here a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." (*Id.* at p. 382.) A nonsignatory plaintiff's "bare *allegation*" of entitlement to fees is not sufficient; instead, "the party claiming a right to receive fees [must] establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party." (*Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1307.)[6]

The critical question with respect to the Individual Plaintiffs' liability for attorney fees, therefore, is whether they would have been entitled to fees had they prevailed. The parties dispute whether this analysis looks solely to the pleadings or considers the pleadings in the context of litigation positions taken by the nonprevailing party. We need not decide this issue because, even considering the complaint in light of the Individual Plaintiffs' litigation posture, they would still have been entitled to attorney fees had they prevailed.

---

[6]     Some courts have stated a nonsignatory plaintiff who merely asserts an entitlement to contract-based attorney fees can be estopped from challenging liability for attorney fees; other courts have criticized this approach. (See *Blickman Turkus, supra,* 162 Cal.App.4th at pp. 897–899 [discussing cases relying on and criticizing estoppel approach].) Neither party relies on this formulation of the legal standard and we do not consider it.

As an initial matter, the Individual Plaintiffs do not dispute that, as a matter of contract law, they would have been entitled to attorney fees had they prevailed in *a* lawsuit asserting rights under the Lease. We agree with the trial court's analysis of this issue. In the Sublease, the Individual Plaintiffs expressly assumed the terms of the Lease; this language was quoted in the complaint. The assignment of the Sublease to Cal-Murphy did not comply with all terms of the Lease and Sublease regarding assignments and thus arguably could have been held void, rendering the Individual Plaintiffs entitled to assert rights under the Lease.[7]

This analysis is not impacted by our previous determination that, in this lawsuit, the assignment to Cal-Murphy extinguished the Individual Plaintiffs' right to enforce the Lease. (*Cal-Murphy, LLC v. MG Restaurants, Inc., supra,* A136198 & A136854 [affirming order sustaining NOP's demurrer as to Individual Plaintiffs' claims].) Our decision issued after the orders challenged in these appeals, and therefore was not the law of the case at the time the orders were made. (See *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309.) Moreover, attorney fees are available in cases involving a nonsignatory party even if the court concludes on the merits the nonsignatory party had no right to enforce the contract, as long as such fees would have been available had the party asserting otherwise prevailed. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [holding fees properly awarded to nonsignatory prevailing defendants found to have no obligations under the contract because "[h]ad [the] plaintiff prevailed on its

---

[7] The Individual Plaintiffs argue NOP waived its right to rely on the Sublease by failing to submit and rely on it until its initial supplemental brief in response to the trial court's request for additional briefing. We are doubtful that NOP waived the relevant argument during the trial court proceedings. Moreover, the Individual Plaintiffs had ample opportunity to respond to NOP's initial supplemental brief in their responding supplemental brief and at the second hearing on that motion. To the extent there was any waiver, we have the discretion to affirm the trial court's ruling based on an argument waived below where the argument, like this one, " 'involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence.' " (*In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 511.) The Individual Plaintiffs do not contend there is any additional evidence relevant to this issue.

7

cause of action claiming [the] defendants were in fact the alter egos of the [signatory] corporation [citation], [the] defendants would have been liable on the [contract]"].) The Individual Plaintiffs alleged contract-based causes of action, thereby asserting their right to enforce the contract. Had the Individual Plaintiffs prevailed in their claimed entitlement to enforce the contract—a possible outcome, as noted above—they would have been entitled to attorney fees.

We are not persuaded by the Individual Plaintiffs' argument that they disclaimed any right to damages or other relief and therefore could not have prevailed in this litigation and been entitled to attorney fees.[8] In support of this argument, the Individual Plaintiffs first point to the complaint's prayer for relief. The Individual Plaintiffs contend the prayer for relief on behalf of all plaintiffs "as their interests may appear" means the Individual Plaintiffs "did not specifically pray for any damages or relief." While this language appears to acknowledge the Individual Plaintiffs *may not* be entitled to any relief in the litigation, it equally indicates that they *may* be entitled and, if so, will seek such relief. In any event, we fail to see the significance of this phrasing. "If the defendant answers [the complaint], the court may grant 'any relief consistent with the case made by the complaint and embraced within the issue,' and the rule is well settled that in a contested case the plaintiff may secure relief different from or greater than that demanded." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 497, p. 633.)[9]

The Individual Plaintiffs next point to positions they took during the litigation. They first cite the following statements made in objections included in Najeeb Shihadeh's written responses to interrogatories, in October 2008 and January 2009, respectively:

---

[8]     In the introduction to their opening brief, the Individual Plaintiffs cursorily assert as an additional ground there was no evidence they had incurred an obligation to pay their attorney. As they do not elaborate on this contention or pursue it in the argument section of their brief, we decline to consider it. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

[9]     As the Individual Plaintiffs concede, the lack of an express prayer for attorney fees would not have precluded them from claiming contract-based fees. (*Ganey v. Doran* (1987) 191 Cal.App.3d 901, 911.)

"Plaintiff is not seeking the damages in his individual capacity," and "the [I]ndividual Plaintiffs do not seek any monetary or other relief in this action personally, but rather were joined because they are in the so-called 'chain of title,' in that [the Lease] was assigned or subleased to [the Individual Plaintiffs] who, in turn, transferred and assigned their interests to [Cal-Murphy], in which Messrs. Shihadeh and Omran were, and are, Members. Ms. Shihadeh is Najeeb Shihadeh's wife." The Individual Plaintiffs cite no authority that written objections in interrogatory responses can be used to preclude the responding party from taking a different position later in the litigation (much less that an objection in the responses of one plaintiff can bind his co-plaintiffs). Moreover, despite these objections, subsequently filed amended complaints continued to assert causes of action on behalf of the Individual Plaintiffs and to pray for relief on their behalf. We cannot conclude that the written objections precluded the Individual Plaintiffs from being the prevailing party.

The Individual Plaintiffs also point to statements in an attorney declaration and brief filed in opposition to NOP's demurrer targeting the Individual Plaintiffs.[10] Counsel for the Individual Plaintiffs declared: "I have always stated that the [I]ndividual Plaintiffs are not seeking any relief in this case, but have been named because they are part of the 'chain of title' and should be named in the action in the event their active involvement as parties may be required." However, the declaration proceeds to equivocate—"the [I]ndividual Plaintiffs may well not be entitled to any relief"—thereby leaving open the possibility that the [I]ndividual [P]laintiffs *may* be entitled to relief. Indeed, the declaration asserts the Individual Plaintiffs "are in privity of contract with NOP and may be necessary or proper parties" in a cause of action for rescission alleged in the complaint. Similarly, the brief states, in pointedly indefinite terms: "In all likelihood, relief would be in favor of Cal-Murphy." The Individual Plaintiffs cite no

---

[10] These documents were filed on June 13, 2011, only 11 days before the Individual Plaintiffs' liability for attorney fees ended under the trial court's ruling challenged here.

authority for the proposition that an equivocal position taken in an attorney declaration and brief would preclude them from subsequently seeking relief in the litigation.[11]

In sum, (1) under the Lease and Sublease, the Individual Plaintiffs would have been entitled to attorney fees had they prevailed; and (2) the Individual Plaintiffs never conclusively disavowed their rights to enforce the Lease or seek relief under the complaint, such as to preclude their ability to prevail and seek attorney fees if they did prevail. Accordingly, we conclude the Individual Plaintiffs were liable for attorney fees for work performed prior to June 24, 2011.

## II. THE AMOUNT OF FEES AND COSTS

The Individual Plaintiffs next argue the amount of fees and costs awarded by the trial court as against them was excessive. We review the amount of fees awarded by the trial court for abuse of discretion (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*)), and find no such abuse here.

### A. Apportionment

The Individual Plaintiffs contend the trial court should have apportioned fees and costs between them and Cal-Murphy according to the different potential recoveries and relative significance of the two sets of plaintiffs.

The trial court has the discretion to allocate costs and fees among multiple nonprevailing parties. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 97–98.) Where, as here, multiple plaintiffs are "represented by the same attorney" and litigate "a single theory of liability against a defendant who prevailed," the failure to

---

[11]    It is of no moment that we relied on this declaration in our previous decision rejecting the Individual Plaintiffs' appeal from the order sustaining the demurrer. (*Cal-Murphy, LLC v. MG Restaurants, Inc., supra,* A136198 & A136854.) The statements identify no current interest in the lawsuit, supporting our previous conclusion that the Individual Plaintiffs failed to show standing. This does not render the statements sufficient to preclude the Individual Plaintiffs from making a later showing of entitlement to relief.

apportion costs and fees among the nonprevailing plaintiffs is not an abuse of discretion. (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1376.)

The Individual Plaintiffs again assert their purportedly de minimus role in the litigation. However, the trial court found otherwise. We decline to reverse this understanding of the trial court, which is in a much better position than we are to ascertain the relative roles of the plaintiffs.

Cases cited by the Individual Plaintiffs affirming trial court decisions allocating fees and costs do not limit the trial court's discretion to decline such allocations. (See *Walker v. Ticor Title Co. of California*, (2012) 204 Cal.App.4th 363, 375; *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 625; *Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 593; *Golf West of Kentucky, Inc. v. Life Investors, Inc.* (1986) 178 Cal.App.3d 313, 318–319.) In the remaining case cited by the Individual Plaintiffs on this issue, *No Oil, Inc. v. Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 28, the court of appeal reversed judgment entered for the defendants and directed entry of judgment in favor of the plaintiffs. The court discussed the award of attorney fees against the defendants on remand, and concluded apportionment of fees between the defendant and the intervening defendant would be appropriate "in light of the disparity between the contribution of defendant Occidental to the necessity for and the burden of the litigation in relation to that of [intervening] defendant Landowners Association. The latter was not responsible for the threatened drilling which occasioned this lawsuit and its participation in the litigation contributed little to the cost of representation of plaintiffs. No substantial new contentions were injected by such defendant and its participation in the trial was for the most part that of an observer. The court should therefore make a fair allocation of the responsibility as between these defendants for payment of the fees awarded plaintiffs." (*Id.* at pp. 28–29, fns. omitted.) The two defendants were represented by different counsel. (*Id.* at pp. 10–11.) In contrast, all plaintiffs here alleged the same causes of action and were represented by the same counsel, and the Individual Plaintiffs' role was not insignificant. The

11

decision not to apportion fees and costs incurred prior to June 24, 2011 was not an abuse of discretion.

### B. *Mitigation*

The Individual Plaintiffs contend the trial court should have reduced the fee and cost award against them due to NOP's failure to mitigate damages. The Individual Plaintiffs cite no case applying this doctrine in the context of determining the amount of fees and costs to which a prevailing party is entitled. We assume without deciding that the doctrine does apply, and reject the Individual Plaintiffs' contention.

The Individual Plaintiffs claim the trial court never considered this argument. The trial court's written order regarding attorney fees stated, "The arguments asserted by the Individual Plaintiffs for [a] lesser amount of fees are all meritless and are thus rejected." The trial court's order regarding costs was silent on this argument, although the trial court discussed it during the costs hearing. On appeal, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*).) We thus presume the trial court considered the Individual Plaintiffs' mitigation argument and rejected it on the merits.

This rejection was not an abuse of discretion. The Individual Plaintiffs contend NOP should not have expended any attorney fees with respect to them after the purported disavowals in the 2008 and 2009 interrogatory responses. However, as noted above, these purported disavowals were ambiguous. The Individual Plaintiffs further argue NOP should have demurred to the Individual Plaintiffs' causes of action in early 2009, instead of waiting until 2011. They cite no authority that an award of fees and costs should be reduced if a prevailing defendant fails to demur to a nonprevailing plaintiff's claims at the earliest possible opportunity. We decline to adopt any such rule, which would be difficult to apply and would inappropriately place the burden on the defendant to remove an improper plaintiff.

**III. FEES ON FEES**

     A. *NOP's Work Opposing Cal-Murphy's Motion to Reopen Discovery*

The Individual Plaintiffs contend they should not be liable for fees incurred opposing a motion to reopen discovery filed by Cal-Murphy during the fee litigation. NOP's only response is to incorporate its prior arguments regarding apportionment.

The motion and related briefs are not in the record on appeal. However, neither party contends the motion pertained to the fee litigation. The reporter's transcript of the hearing on the motion, which is part of the record on appeal, confirms this. The work was thus conducted as part of the underlying litigation after the Individual Plaintiffs were dismissed from the case. Accordingly, pursuant to the trial court's prior ruling that the Individual Plaintiffs are liable only for fees incurred prior to June 24, 2011, these fees should have been allocated to Cal-Murphy alone. As the amount of fees attributable to this work is not in dispute, we will modify the judgment accordingly.[12]

     B. *NOP's Initial Fees Motion*

Plaintiffs next contend the trial court abused its discretion by failing to reduce the requested fee award for NOP's "unproductive" work prior to the supplemental briefing. We disagree.

Plaintiffs complain the trial court did not explain its reason for refusing to reduce NOP's fees. "The superior court was not required to issue a statement of decision with regard to the fee award. [Citation.] Moreover, although [plaintiffs] opposed the motion for attorney fees, [they] did not request a statement of decision with specific findings. ' "All intendments and presumptions are indulged to support [the judgment] on matters as

---

[12]    In their opening brief, plaintiffs did not challenge the trial court's award of fees against all plaintiffs jointly and severally for NOP's work litigating the Individual Plaintiffs' fee liability. In their reply brief, plaintiffs cursorily state fees for this work should not be awarded against Cal-Murphy. We decline to consider this argument, which was "neither timely nor fully made." (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)

13

to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum, supra,* 24 Cal.4th at p. 1140.)

Plaintiffs have failed to make such a showing. As an initial matter, NOP's work prior to the supplemental briefing included arguing entitlement to contract-based fees for work pertaining to all causes of action and the appropriate lodestar amount—work that was indisputably productive. Even if NOP's original theory regarding the Individual Plaintiffs' fee liability changed somewhat after the initial hearing (a point the parties vigorously dispute, and which we need not decide), the trial court may have found this work nonetheless helpful, a finding to which we must defer. (*PLCM Group, supra,* 22 Cal.4th at p. 1095 ["The 'experienced trial judge is the best judge of the value of professional services rendered in [his or her] court, and while [his or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion."].) In any event, " '[l]itigation may involve a series of attacks on an opponent's case. The final ground of resolution may become clear only after a series of unsuccessful attacks. [Attorney fee] [c]ompensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim.' " (*Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 405, fn. omitted [affirming fee award pursuant to section 1717].)

## DISPOSITION

The orders appealed from in A137609 are affirmed.

The order appealed from in A139772 is modified by replacing the last sentence with the following: "All Plaintiffs are jointly and severally liable for $186,922.25 of this amount; Cal-Murphy is solely responsible for the remaining $3,089.75." The corrected and second amended judgment on claims of individual plaintiffs Shihadeh and Omran, also appealed from in A139772, is modified by replacing paragraph 3 with the following: "A Corrected and Second Amended Judgment be entered in favor of NOP and against the

14

Individual Plaintiffs in the additional amount of $1,623,922.25." As so modified, the order and judgment appealed from in A139772 are affirmed.

Respondents are awarded their costs on appeal.

                                                  _____
                                                  SIMONS, Acting P.J.

We concur.


_____
NEEDHAM, J.


_____
BRUINIERS, J.


(A137609, A139772)